the Judges pronounced their opinions, seriatim.
Judge Cabell.
This was originally, an Ejectment brought by David Hunter against Denny Fairfax, in the Winchester District Court, for a tract of land lying in that part of Virginia commonly called the Northern Neck. In that Court, the parties, by their counsel, agreed a case which it is deemed unnecessary to set forth at large. It will be sufficient to observe that, upon the case agreed, it was contended on the part of those claiming under Lord Fairfax, that Lord Fairfax being a citizen of this Commonwealth, and *4 seized in absolute fee simple of the lands in controversy, died in December, 1781, having devised’his lands in the Northern Neck, including those in controversy, to Denny Fairfax, who, it was admitted, was born in England, in the 0 year 1750, and had never become a citizen of Virginia, or of any of the United States. That the said Denny Fairfax 'was capable of taking and holding the lands devised to him, until divested by an inquest of office or some equivalent act; and that no such act had taken place prior to the treaty of peace made and concluded between Great Britain and the United States of America, which, it was farther alleged, protected his property, and released any supposed right of the Commonwealth to the lands in question.
On the part of Hunter, it was contended that Denny Fairfax, being at the time of the devise aforesaid, and ever after, an alien, was incapable of holding lands in this Commonwealth ; that admitting an inquest of office to have been necessary under the general laws applying to ordinary cases, the several acts of Assembly stated in the case agreed, respecting the mode of acquiring titles to certain lands in the Northern Neck, were equivalent thereto and supplied the place thereof, in relation to such lands, and justified the grant thereof, made by the Commonweath to Hunter on the 30th-of April, 1789-
The District Court of Winchester, on the 24th of April, 1794, gave'a judgment upon the case agreed, for Fairfax; whereupon Hunter appealed to this Court, and Denny Fair-fax having died, the appeal was revived against Philip Martins his heir at law and devisee.'
The cause was argued in May 1796, and re-argued in October, 1809 ; and judgment was rendered on the 23d April, 1810, reversing the Judgment of the District Court. The entry on the order book then proceeds : — “ And this Court proceeding to give such judgment as the said District Court ought to have given, is of opinion, that the law arising on the case agreed in this cause, is for the appellantand judgment was accordingly entered for him. From Mr. Munford’s Report of this cause, however, it appears that the two Judges who decided it, were divided in opinion as to the effect of *5 the several acts of Assembly, and the treaty of peace set forth in the case agreed, which division of the Court would have amounted to an affirmance of the Judgment of the Dis-a’ict Court. But as the Court adverting to the act of compro- . „ _ mise of the year 1796, (see Session Acts oi 1796, and an appendix to the 2dvol. Rev. Code p. 71) between the Commonwealth and the purchasers under Denny Fairfax, b.y which the purchasers, in consideration of a release by the Commonwealth of its claim to “ any land specifically appropriated by Lord Fairfax to his own use, either by deed or actual survey,” agreed to release to the commonwealth “ all claim to lands supposed to lie within the Northern Neck, which were waste and unappropriated at the time of the death of Lord Fairfax and it being admitted by the case agreed, that the lands in question were of this last description, and it appearing moreover that the purchasers had actually availed themselves of the said compromise, by reversing two judgments in favour of the Commonwealth, and both Judges concurring in opinion, on the ground of the compromise ¡ the judgment of the District Court was reversed, and judgment was entered for the appellant Hunter.
To this judgment, Fairfax’s devisee obtained a writ of error from the Supreme Court of the United States, under the 25th Section of the Act of Congress, passed the 24th September, 1789, (1st volume Laws of the United States, p-63) which declares “ That final judgment or decree in any suit, in the highest Court of law or equity of a state, in which a decision in the suit could be had, where is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States, and the decision is against their validity ; or, where is drawn in question the validity of a statute, of, or an authority exercised under any state, on the ground of their being repugnant to the constitution, treaties or laws of the United Stales, and the decision is in favour of such, their validity, or where is drawn in question the construction of any clause of the constitution, or of a treaty or statute of or commission held under the United States, and the de-cision is against the title, right, privilege or exemption. *6 specially set up or claimed by either party under such clause °f tlie said constitution, treaty, statute or commission, may be re-examined or reversed, or affirmed in the Supreme Court of the United States upon a writ of error, the citation , • • , , , . . T , , being signed by the Chief Justice, or Judge, or Chancellor of the Court rendering or passing the judgment or decree complained of, or by a Justice of the Supreme Court of the United States, in the same manner and under the same regulations ; and the writ shall have the same effect, vs if the judgment or decree complained of, had been rendered >? passed in a Circuit Court, and the proceeding upon the reversal shall also be the same, except that the Supreme Court, instead of remanding the cause for a final decision as before provided, may at their discretion, if the cause shall have been once remanded before, proceed to a final decision of the same and award execution. But no other error shall be assigned or regarded as a ground of reversal in any such case as aforesaid, than such as appears on the face of the record, and immediately respects the before mentioned questions of validity or construction of the said constitution treaties, statutes, commissions or authorities in dispute.”
The record having been carried by this writ of error into the Supreme Court of the United States, that Court reversed the judgment of this Court, and affirmed that of the District Court of Winchester, and ordered the cause to be remanded to this Courtli with instructions to enter judgment for the appellant Philip Martin.” By the mandate directed to this Court, and reciting the judgment of the Supreme Court of the United States, the Judges of this Court are “ commanded that such proceedings be had in the said cause, as according to right and justice and the laws of the United Stales» and agreeably to said judgment and instructions of said Supreme Court, ought to be had.”
'When the mandate was presented to the Court, doubts were suggested whether the case comes within the intent and meaning of the provisions of the Act of Congress aforesaid, and admitting it does come, within them, whether the provisions themselves are authorised by the constitution of *7 the United States. The suggestion of these doubts was followed by an argument from the bar, elaborate, able and profound. According to the view which I have taken of the subject, however, I do not deem it necessary to give an opinion on all the points presented in the argument.
I shall not enquire whether this is such a case as is contemplated by the act of Congress ; I shall proceed upon the admission that it is so ; that it is the case of a final judgment, in the highest Court of a state, in which a decision in the suit could bo had ; that the record shows that the construction of a treaty has been directly drawn in question, and that the decision has been against the title set up or claimed by one of the parties, under that, treaty. In such a case, has the Congress of the United States, a right, under the federal constitution, to confer on the Supreme Court of the United States, a power to re-examine, by way of appeal or writ of error, the decision of the state Court ; to affirm or reverse that decision; and in case of reversal, to command the state Court to enter and execute a judgment different from that which it had previously rendered ? 1 am deeply sensible of the extreme delicacy and importance of this question. I have diligently examined it according to my best ability, uninfluenced, I trust, by any other feelings than an earnest desire to ascertain and give to the constitution, its just construction ; being as little anxious for the abridgment of the federal, as foi the extension of the state jurisdiction. My investigations have terminated in the conviction, that the constitution of the United States does not warrant the power which the act of Congress purports to confer on the federal judiciary.
It was justly observed, in the argument, that our system of government is sui generis, unlike any other that now exists, or that has ever existed.' — Resting on certain great principles which we contend to be fundamental, immutable and of paramount obligation, it will not be found to want any of the powers of legitimate government; but, the distribution and modifications of those powers have no parallel. To the federal government are confided certain powers, specially enumerated, and principally affecting our foreign rBlstjoroj.am! *8 general interests of the nation. These powers are limited? not only by their special enumeration, but by the positive de» claration that, all powers not enumerated, or not prohibited to the states, are reserved to the states, or to the people. This demarcation of power is not vain and ineffectual. The free exercise, by the states, of the powers reserved to them, is as much sanctioned and guarded by the constitution of the United States, as is the free exercise, by the federal government, of the powers delegated to that government. If either be impaired, the system is deranged. The two governments, therefore, possessing, each, its portion of the divided sovereignty, although embracing the same territory, and operating on the same persons and frequently on the same subjects, are nevertheless separate' from, and independent of, each other. From this position, believed to be incontrovertible, it necessarily results that each goverment must act by its own organs : from no other can it expect, command, or enforce obedience, even as to objects coming within the range of its powers.
But whilst, on the one hand, neither government is left dependent upon the other, for the exercise of its proper powers, so on the other hand, neither government nor any of its departments, can act compulsively, on the other or any of its organs in their political or official capacities ; with the single exception, perhaps, of the case where a state may be sued. In using the term compulsive action, I do not mean to restrain it to the idea of actual force, but to extend it to any action imposing an obligation to obey. The present government of the United States, grew out of the weakness and inefficacy of the confederation, and was intended to remedy its evils. Instead of a government of requisition, we have a government of power. But how does that power operate ? On individuals, in their individual capacities. No one presumes to contend, that the state governments can operate compulsively on the general government or any of its departments, even in cases of unquestionable encroachment on state authority ; as, for example, if the Federal Court should entertain jurisdiction, in personal actions, between citizens *9 of the same state, not involving questions concerning the construction of the constitution of the United Stales, nor concerning the validity or construction of any statute, treaty, commission or authority of, or under, the gene 1 overnment, nor concerning the validity of any statute, commission or authority of, or under, ■ state government. Such encroachment of jurisdiction could neither be prevented nor redressed by the state government, or any of its departments, by any procedure acting on the Federal Courts. I can perceive nothing in the constitution which gives to the B'ederal Courts any stronger claim to prevent or redress, by any procedure acting on the stale Courts, an equally obvious encroachment on the Federal jurisdiction. The constitution of the United States contemplates the independence of both governments, and regards the residuary sovereignty of the states, as not less inviolable, than the delegated sovereignty of the United States. It must have been foreseen that controversies would sometimes arise as to the boundaries of the two jurisdictions. Yet the constitution has provided no umpire, has erected no tribunal by which they shall be settled. The omission proceeded, probably, from the belief) that such a tribunal would produce evils greater than those of the occasional collisions which it would be designed to remedy. Be this as it may, to give to the general government or any of its departments, a direct and controlling operation upon the state'departments, as such, would he to change at once, the whole character of our system. The independence of the state authorities would be extinguished, and a superiority, unknown to the constitution, would be created, which would, sooner or later terminate in an entire consolidation of the states into one complete national sovereignty.
If these principles be correct; if the two governments and their departments are separate, distinct from, and independent of each other, and neither can act directly and compulsively upon the other, there is an end of the question now before the Court; for the question is, in fact, whether the Federal Court can act directly on this Court, by obliging it to enter a judgment not its own
*10 But this principle of the separation and independence of the departments of the two governments, deserves farther de> velópement. The writer commonly called the Federalist,- and who has ably elucidated many of the principals of our government, lays down the position, that “ the national and state systems are to be regarded as one whole’* (letter 82, p. 245-246.) From this position, both he and the counsel for the appellee, have inferred the right of appeal from the state, to the Federal Courts. The position itself, however, is assumed without proof or illustration, nor is the sense in which it is to be understood, distinctly unfolded.
There is only one sense in which it is believed to be true, The national and state governments are the depositories of all the powers known to our system of government. In this view, they may, perhaps, be considered as one whole. But this proves nothing, and leaves us where it found us. We must resort to some other source to ascertain the distribution of those powers, and the relation which the parts of this whole, sustain towards each other. To justify the inference that has been deduced, it must first be proved that the parts are connected, and that the one is superior to, and has a direct, commanding and controlling power over the other— which is the very point in controversy. It may farther be observed that the Courts of the United States derive their power from, and owe responsibility to the people of the United States ; whereas the State Courts derive their power from, and owe responsibility to the people of their respective states. They emanate from different sources, and have no 'common or connecting head.
I can perceive no force in the argument attempted to be drawn from the sixth article of the constitution of the United States, which declares that the constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made under the authority of the United States, shall be the supreme law of the land; and the Judges in every state shall be bound thereby. From this obligation no exemption will be claimed for the State Courts. But it imposes a subjection to the consti *11 ustión, and to the laws and treaties made under its authority ; not a subjection to the Federal Courts. What that constitution is, what those laws and treaties are, must, in cases coming before the State Courts, be decided by the State Judges, according to their oían judgments, and ufion their own res/ionsibility. To the opinions of the Federal Courts, they will always pay the respect which is due to the opinions of other learned and upright Judges ; and more especially when it is considered that all the cases of federal cognizance, may, as I shall hereafter endeavour to prove, be originally carried before the Federal Courts, and probably would always be carried there, unless there should be a conformity between the decisions of the State Courts, and of the Federal Courts. The Courts of this State have furnished repeated evidences of this respect for the decisions of the Federal Court — but it is resfiept only, and not the acknowledgment of conclusive authority.
Such are my conclusions from the general character and principles of our institutions. They are strengthened and confirmed by an examination of the particular clauses of the constitution concerning the judiciary.
The first section of the 3d article declares, that “ the judicial power of the United States shall be vested in one Supreme Court, and in such Inferior Courts as the Congress may, from time to time, ordain and establish. The Judges both of the Supreme and Inferior Courts shall hold their offices during good behaviour, and shall at stated times, receive for their services a compensation, which shall not be diminished during their continuance in office.55 The obvious meaning of this clause is, to designate the organs by which the United States are to exercise the judicial powers with which they are invested^ These organs are Federal Courts, held by Judges commissioned by the President of the United States, independent by the stability of their compensation, and of the tenure of their offices, and responsible by their liability to impeachment and trial before the Senate of the United States for misbehaviour in office.
*12 If this Court should now proceed to enter a judgment in this case, according to the instructions of the, Supreme Court, the Judges of this Court, in doing so, must act either as Federal or as State Judges. But we cannot be made Federal Judges without our consent, and without commissions. Both these requisites being wanting, the act could not? therefore, be done by us, constitutionally, as Federal Judges. We must, then, in obeying this mandate, be considered still as State Judges. We are required, as State Judges to enter up a judgment, not our own, but dictated and prescribed to us by another Court. This as to us would be either a judicial or a ministerial act — If it be the latter, I presume it will not be contended that the Federal Court has a right to make the Judges of this Court its ministerial agents — Let it then be a judicial act. But, before one Court can dictate to another, the judgment it shall pronounce, it must bear, to that other, the relation of an appellate Court. The term appellate, however, necessarily includes the idea of superiority. But one Court cannot be correctly said to be superior to another, unless both of them belong to the same sovereignty. It would be a misapplication of terms to say that a Court of Virginia is superior to a Court of Maryland, or vice versa. The Courts of the United States, therefore, belonging to one sovereignty, cannot be appellate Courts in relation to the State Courts, which belong to a different sovereignty — and of course, their commands or instructions impose no obligation.
The second section of the 3d article enumerates the cases to which the judicial power of the United States shall extend ; and the 8th section of the first article declares that Congress.shall have power to make all laws which shall be necessary and proper for carrying into execution all the powers vested in the general government, or any department thereof. But this effectuating power, as it has been termed, must, of necessity, be limited to constitutional means. In relation to judicial powers, these means have been already shewn to be Federal Courts, and Judges duly commission- *13 -d — But the act of Congress now under consideration, attempts, in fact, to make the State Courts Inferior Federal Courts, and to exercise through them, jurisdiction over the subjects of federal cognizance. The State jurisdiction had expended itself on the rendition of the judgment heretofore pronounced, or rather, was suspended by the writ of error awarded to that judgment. All that has been subsequently done, has been confessedly nothing more than the exercise of Federal jurisdiction, in a Federal Court ; and if we were now to obey this mandate, it would be only a continuation of the same jurisdiction; it would be the same Court pronouncing its judgment through us, who not being commissioned, are not bound nor authorised to become such organs.
The constitution next speaks of the jurisdiction of the Federal Courts as original and appellate. “ In all cases affecting ambassadors, and other public ministers and consuls, and those in which a state may be a party, the Supreme Court shall have original jurisdiction. In all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction.” I have already endeavoured Uk shew, that on general principles, no court, of one sovereignty, can be said to be superior or supreme, in relation to the courts of another sovereignty. If, therefore, I am correct in this position, the appellate jurisdiction of the Supreme Court of the United States, must have reference to the inferior Courts of the United States, and not to the State Courts. But, putting this general principle out of view, it would seem impossible that the clause under consideration could admit of any other rational construction. The first clause of the third article, before mentioned, speaks of the different Courts, in which the judicial power of the United States shall be vested as superior and inferior; the next enumerates the cases to which that judicial power shall extend ; and the one now under consideration, resuming the subject of the Courts, speaks of the jurisdiction of the Supreme Court as original and appellate. The term supreme must be understood in reference to the Inferior Courts immediately before mentioned; and it must be in relation to them, and not to the State *14 Courts, that the Supreme Court is to exercise appellate, ju- ... . J t’Jscuction. It has been contended that the constitution eontemplated only the objects of appeal, and not the tribunals ^10m which the appeal is to be taken ; and intended to give to the Supreme Court of the United States appellate jurisdiction in all the cases of federal cognizance. But this argument proves too much, and what is utterly inadmissible It would give appellate jurisdiction, as well over the courts of England or France, as over the State courts; for, although I do not think the State Courts 'we foreign Courts in relation to the Federal Courts, yet I consider them not less indepen-) dent than foreign Courts.
If the appellate power now claimed for the Federal Courts, is given by the constitution, it is, unquestionably, not given in express terms, but is only deducible by inference and implication. Let us attend for a moment, to the effects and consequences of such a power. — The counsel for the appellee, claimed for the Federal Courts, not only the power to determine, finally and conclusively, all cases which might be carried before them in a due course of appeal, but also a right, as resulting necessarily and inevitably from the very nature of the appellate power, to determine finally and conclusively, on the extent of their own jurisdiction. My impression is, that this right would necessarily result from the grant of appellate power. The right to determine the question of jurisdiction, or in other words, the eases to which the appellate power extends, must rest somewhere. It must be vested in the Inferior, or in the Appellate Court. To vest it in the Inferior Court, would be to invert the order of nature, to. make the Inferior greater than the Superior. It would be to repose more confidence in the Inferior Court, from whose judgment an appeal is allowed, than in the Superior Court, ivhich has power to reverse the judgments of the Inferior — , and would often defeat the object of the grant of appellate power. It has, accordingly, been the uniform practice of all appellate courts to decide their own jurisdiction in relation to the courts as to which they are appellate; and the practice fias been uniformly submitted to by the Inferior Courts. Cali *15 it be believed that a power involving such consequences, which would thus place the state courts at the feet of the Federal Courts, and make them the unwilling instruments of their usurpation of state rights, (should such usurpation ever be attempted ;) canif.be believed, that sucha power, if it had been intended to be given, would have been granted by implication and inference only ?
It was contended by the counsel for the appellee, that if the appellate power of the Federal Courts be denied, there will be no other mode by which congress can extend the judicial power of the United States to the cases of federal cog • nizance ; that 'there will, consequently, be no uniformity of decision ; that the general government will be deprived of the power of executing its laws and treaties; that the purposes for which that government was adopted, will be defeated, and that, in many instances, the peace of the country will be endangered. If these evils were to follow our decision, I should nevertheless be constrained to pronounce it, convinced as I am, that the defects of our system of government must be remedied, not by the judiciary, but by the sovereign power of the people. But I cannot perceive that any such evils are likely to arise. The powers vested by the constitution, in the congress of the United States, were delegated for purposes essential to the general welfare, and ought not to be defeated or impaired : and I have no doubt, that one of these powers is that of making all laws, necessary and proper, for extending the judicial power of the United States, to all the cases, to which the constitution declares that that power shall extend. I must not, however, be understood as impeaching the concurrent jurisdiction, original and final of the State Courts, Crowded the parties shall elect that jurisdiction. I do not understand the counsel for the appellee as denying the concurrent original jurisdiction of the State Courts ; nor can I perceive any better reason for denying iheir final jurisdiction in all those cases which the parties shall submit to their decision. All the purposes of the constitution of the United States will be answered by the erection of Federal Courts, into which any party, plaintiff <»; *16 defendant, concerned in a case of federal cognizance, may carry it for adjudication ; for, it was never intended to force the parties into those courts against their will. The right of the plaintiff, to have his case tried before the federal courts, is unquestionable, as he may institute his suit in the State or Federal Courts, at his own option; and it will be sufficient for the defendant sued in a State Court, if the act of congress shall give him the power, to remove the case at any time before judgment into the Federal Courts. I cannot doubt that congress may give this power consistently with the constitution ; for, otherwise, the judicial power of the United States might be eluded at the pleasure of any plaintiff. If then the plaintiff shall elect the state jurisdiction, by bringing his suit in the State Court, and the defendant shall also elect it by submitting to it, they must, from the nature of the judicial power reserved to the states, be contluded by the judgment, unless there be an appeal to some Superior Court, which I have endeavoured to shew is not the case with respect to the Federal Courts. If, after a judgment in a Stale Court, in any such case, there .shall be a complaint of a want of uniformity of decision, of a defective execution of the laws of the union, of a violation of rights under the constitution, laws or treaties of the United States, or complaints of any other kind whatsoever, the answer to them all, both in relation to foreigners and others, is that the parties have elected their own tribunal; a tribunal, over which the general government has no controul, and for Whose decisions, therefore, it owes no responsibility.
Upon every view of the subject yhich I have been able to take, I am of opinion that the writ of error was improvidently awarded, and that this court should decline obedience to the mandate of the Supreme Court df the United States.
Judge Brooke.
This cause, having been finally decided in this court, comes back here on a mandate from the Supreme Court of the United States, wherein the judgment of this court has been reversed; by which mandate it is required tha,t such proceedings be had in the said cause, as. *17 according to right and justice, and the laws of the United States, and agreeably to the judgment and instructions of the said Supreme Court, ought to be fiad.
The question that arises out of this mandate, and which is now'to be decided by this court, is certainly a very delicate one, and ought to be approached with great deference for the opinion of the Supreme Court of the United States-but, as the decision involves in it a high duty on the part of this court, it must be examined under a proper sense of the obligation which that duty imposes. As preliminary to any investigation of the power of the Supreme Court under the Constitution of the United States, and the Act of Congress which has been relied on to issue the mandate in question, it has been urged by the counsel who support it, that the opinion of the Supreme Court is conclusive upon this court; that having decided on the constitutionality and legality of its own powers, it would be an inversion of the due subordination of an inferior to a superior tribunal, to question its authority. The obvious objection to this argument is, that it assumes the proposition which is denied, and begs the question that is to be decided.
,If it were admitted that this court is an inferior court in relation to the Supreme Court of the United States, and that both courts were but parts of the same system, in the sense now contended for, it would seldom happen that the mandate of the superior to the inferior would be questioned, Yet, under that state of things, if it were permitted to argue from the abuse of power, cases might be put in which the power of the Supreme Court might be so irregularly exercised as to compel the inferior court to disobey .its writ. Where power is not unlimited, however high the tribunal invested with it, subordination must be limited; and there will be a point at which obedience will end, and resistance begin: — nor does this course of reasoning involve in it any insubordination of the inferior to the superior. Where the power or jurisdiction of the latter is admitted, there is still a wide field for the exercise of its superiority, having the exclusive right to decide on the law and right of the case,
*18 The preceding remarks will be entitled to more Weight when it is recollected that it has neyer yet been contended that the Supreme Court can take jurisdiction of all the cases that may come within thé jurisdiction of this court. It can take jurisdiction, under the Constitution of only a part of the subjects of jurisdiction here; — yet, according to this argument of implicit obedience to its mandates, it may sweep away the whole of the jurisdiction of this court as the supreme court of the state, and, contrary to the plain letter of the constitution of the United States, which gives that court some jurisdiction, take all. The question, then, must occur here, whether the Supremo Court, under the authority of the 25th section of the Act of Congress, to establish the judicial courts of the United States, has exercised a power not belonging to it under the Constitution of the United States. That question may be either general or particular. The general question is, has the supreme court the power to issue its mandate tp this court in any case ? — the particular quéstion will be, has it that power in the case before us ? — Unless the general question shall be decided in its favour, it will be unnecessary to examine how far it has transcended its power in the case under consideration.
In deciding this first question, recurrence must' be had to the Constitution itself; — for though I subscribe to the doctrine of one of the counsel, that, to the extent that the States have parted with their power, they ought to part with their pride, yet I cannot as implicitly assent to the position that, where state rights are violated, they can only be defended in the general government, in Congress, or by appealing to the people. The state authorities have been said, with great fqree, to be the guardians of the people’s and their own rights. The right to resist infractions of the Federal Constitution, proceeding from the general government, or any department thereof, has been solemnly asserted in Virginia, (a) and seems to result from the nature of the two goyerntnents. In the work entitled the Federalist, so much re *19 Hed on, in the argument, for sound exposition of the Constitution, vol. ii. p. 26, it is said that, among a people consolidated into one nation, an indefinite supremacy over all persons and things, so far as they are the objects of lawful government, is completely vested in the national legislature 5 but, among communities united for particular purposes, it is vested partly in the general, and partly in the municipal legislatures: — in the former case, all local authorities are subordinate to the supremein the latter, the local or municipal authorities form distinct and independent portions of the supremacy, — -no more subject, within their respective spheres, to the general authority than the general authority is subject to them within its own sphere. In this relation the federal government cannot be deemed a national one, since its jurisdiction extends to certain enumerated objects only, and leaves to the states a residuary and inviolable sovereignty over all other objects. This, as a general exposition of the Constitution, appears to me perfectly correct s — -it ascertains, upon principles that result from the relation in which the national and state governments stand to each other, the complete independence of each.principles, which were again recognized in the Resolutions passed by the Assembly of Virginia in 1799> and which were before alluded to. And, looking into the Constitution with these lights, I have not been able to perceive in it any ground for the position that the state authorities can be controlled by the general authority, or any portion of It, nor that the latter has the power to establish the tribunal which is to decide controversies between them, without, any appeal by the former to that instrument. That appeal will now be made; and, in making it, I shall pass by the preamble to the Constitution, because I can not perceive that any inference can be drawn from it favourable to the claim of power now set up : — of which I am the more confident, in as much as it has not been resorted to, in the work before cited, for that purpose; and because also, the construction given to that part of the instrument by the report, an which the resolutions before referred to were founded, *20 has generally been admitted to be correct. That construction restricts the means of obtaining the great objects, proposed in the preamble, to the special grants of power which are to be found in the Constitution. The 3d article of the Constitution is an example of those means particularly applying to the case under consideration. It declares that the judicial powers of the United States shall be vested in one Supreme Court, and such other courts as' the Congress may, from time to time, ordain and establish : — the judges,both of the supreme and inferior courts, shall hold their offices during good behaviour, and shall, at stated times, receive for their services a compensation which shall not be-diminished during their continuance in office. How it is possible to extract from any expression in this article an authority to this court to exercise any of the judicial powers of the United States, I.have not been able to perceive: — . that the state courts, by any .reasonable construction of the article, can be included in it, I think impossible. They are not ordained and established by the Congress; nor is there any thing in the general tenure of the Offices of the state judges which can bring them within its operation. They are not responsible to the general government for the performance of their duty; and irresponsibility to that power which imposes a duty, would.be a new principle obviously incompatible with the acknowledged principles of our institutions. The authors of the work referred to, admit, (p. 223,) that the article recited wears the appearance of confining the causes of federal cognizance to the Federal Courts, and deduce from it a different conclusion, by a train of reasoning which seems to confound judicial power with the subjects that may come within its cognizance. The appellate power of the Supreme Court of the United States, which is defined in the 2d section of the article, is not confined to cases decided in the inferior federal courts, to which it plainly refers, but is supposed to extend to all cases of the same description, in whatever court they may have been decided ; as if the decisions of courts founded on the ¿ex ¿oci¡ necessarily subjected them to the appellate jurisdiction of *21 die government, the laws of which may come in question. The words of the 2d member of that section are, “ in all cases affecting ambassadors, other public ministers and consuls, &c. the Supreme Court shall have original jurisdiction —in all the other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to Saw and fact. The obvious relation which the appellate power, vested in the Supreme Court by the foregoing expressions, bears to the inferior tribunals, to be ordained and established by Congress in virtue of the first section of the same article, is too manifest to be questioned : — but this construction is fortified by other considerations. The appellate jurisdiction is given both as to law and fact, and, without power in Congress to regulate the proceedings in the state courts, if extended to those Courts, would be impracticable : according to the common law rule of trial, which prevailed in most, if not all, of the state courts, an appeal from the facts would be impossible, without a reexamination of the witnesses from remote distances, or by depositions in violation of the practice in most, if not all, of the state courts. The 9th article of the amendments to the constitution furnishes additional light on this view of the subject. Plainly referring to the. courts of the United States, it declares that, at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ; and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law. The objects of this amendment are, first, to preserve the trial by jury in the federal courts, and secondly, to take from those courts the power of re-examining any fact, tried by,a jury, otherwise than according to the principles of the common law. The two provisions taken in connection, as they are found in the article, exclude the idea of the relation of either of them to the state courts ; — a circumstance of considerable weight, when it is considered that one of the objects is to regulate the proceedings in the federal courts, founded #n the appellate power, both as to law and faot, deriyed from *22 the third article before referred to¿ I conclude, therefore, that neither from the letter, nor from a view to any practical result- can a construction be given to that article which could extend the appellate jurisdiction of the Supreme Court to the state courts. My confidence in the correctness of that conclusion, would be somewhat diminished, if I could possibly foresee all of the dangerous consequences, that have been anticipated by the counsel who contend for the authority of the Supreme Court, The power which is given to congress to ordain and establish inferior courts, was evidently intended to enable the national government to institute, ip each state or district of the United States, a tribunal competent to the determination of all matters of national jurisdiction within its limits, whenever deemed necessary by congress.
To have relied on the state authorities as the means of exercising its most essential powers, would have totally, changed the character of the national government, and re* duced it to a state of imbecility little short of that of the former confederation. The great and radical vice in that system, was in the principle of legislation for states or governments, as contradistinguished from the individuals of whom they consist. On a nearer view of the present system, it will be found to have escaped the enfeebling consequences of that principle; for, though, in relation to the objects and limitation of its powers, ánd to the sources from which it dei rives those powers, it may be deemed a federal government, yet, in relation to the objects on which it operates, it is certainly a national only. Legislating for individuals, it contains, within itself, every power requisite to the complete execution of the trusts confided to it, free from every other control, but a regard to the public good, and the sense of its constituents. The argument, then, that, unless the state Courts admit the right of appeal to the Supreme Court, the great national objects of the federal government will be unattainable, loses all its force. If it were true, that the cases of national jurisdiction enumerated in the constitution, could fee finally and conclusively decided in the state courts, with *23 ■out power in the general government, through its own courts, to take jurisdiction of those cases, either before or after those decisions, as it may be important to the nation, there would be some cause for alarmbut the foregoing remarks lead to no such conclusion.(b)
The principle on which the state courts take jurisdiction of the cases enumerated in the constitution, is common to all courts having jurisdiction of the controversy before them. They decide in conformity to the law of any government that may come in question.(c) This principle does not deny to the federal government, in common with other governments, through its own courts, to decide the same case where the parties are within its jurisdiction. Without the means cf *24 enforcing and giving to its treaties, its laws, and its acts, an uniform construction, it would be incompetent to attain the great objects of its institution. Moving within the circle of its constitutional powers, its authority will be exercised, in a great degree, without the range of the state authorities» The difficulty which presents itself to the operation of the general and state governments, on the same objects, has been felt in many cases; but it is one which grows out of the system.itself, and, without a change of that system, can* not be entirely obviated. That it may be much diminished by' a.prudent exercise of the powers appertaining to each, has been proved by experience. Legislating for individuals who are equally citizens of the general and state governments, the authority of that government must be, considered as paramount, which, under a fair construction of the constitution, has the conclusive power to act or to legislate- on the subject. The oath to súpport the constitution, with a strong responsibility to those from whom all power is derived, seem to be the only sanctions against the exercise of power not given by the people. That oath which is prescribed by the sixth.article, imposes no subordination upon those to whom it is administered : — if is common to all who exercise power under either government. The obligation which is imposed by the same article on the judges in all the states to respect the constitution, the laws, and all treaties which shall be made under the, authority of the United States, furnishes no ground of objection to the preceding remarks. It cannot be construed to give to the Supreme Court, power to enforce the responsibility of the state judges under that obligation. The article implies nothing more than it declares; that is, that' the constitution, .and the laws of the United States, which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land. On the contrary, it leaves to the state judges the right to enquire whether the laws, treaties, See. have been made in pursuance of the constitution. Standing on the ground of that article, alone, if there was no other, I should feel myself compelled *25 to enquire whether the 25th section of the Act of Congress, under the authority of which the mandate in question was awarded, is in pursuance of the constitution, or repugnant thereto. On the ground of mere implication, or doubtful inference, to decide that a law is unconstitutional, would at all times be highly improper. The judge ought to be deeply impressed that the law in question is in direct opposition to the plain meaning of that instrument; and, feeling that impression, he would be unmindful of the great trust confided to him, and of the sacred obligations of duty, if he were to shrink from the decision. Under the full influence of that impression, I am constrained to declare it to be my opinion, that so much of the 25th section of the act of congress, in pursuance of which the mandate in this case was issued, as requires of this court to exercise the judicial powers therein prescribed, is a violation of the constitution ; that the writ of error was improvidently allowed by one of the judges of this court; and that obedience to the mandate ought to be refused.
Judge Roane.
This case comes before the court, upon a special mandate from the Supreme Court of the United S ates. That mandate recites a judgment of that court, which reverses a judgment of this court, and commands the judges of this court, to carry the reversing judgment into execution. That judgment was rendered upon a writ of error, sued out to the judgment of this court, under the provision of the twenty-fifth section of the judicial act of the United States, (a) upon the ground, as is supposed, that this court had decided against a treaty, or a right claimed under a treaty. The judgment of this court had reversed a judgment of the District Court of Winchester, rendered in favour of Denny Fairfax, under whom the appellee, (Martin,) claims, in an action of ejectment, brought against him by the appellant, and had required the court below, to carry the same into execution. — In that action a case was agreed between the parties, in which the defendant relied upon the treaty of peace, between the United States and Great Britain; Bat *26 that treaty constituted only one link of his defence or title.' J There are also many other distinct facts or findings,- comprisin the case agreed, each of which is, perhaps, also devi» s^e into other facts or findings,* and as the judgment of this court, as appearing on the record, is merely general, and does not state the particular point on which it was rendered, it may be, (as the fact realy was, in relation to the judgment of this court,) that neither judgment was rendered upon the construction of the treaty.
The question which now arises, upon this mandate, is of the first impression in this court, and of the greatest moment. . — The court,consequently, invited the members of the bar to investigate it, for it’s information; several of whom, in addition to the appellee’s counsel, discussed it, accordingly, in a very full and able manner % since which, it has received the long and deliberate consideration of the court. This course of the court, to say nothing of it’s general- character, should have spared the appellee’s counsel the trouble, of exhorting (a) this High Tribunal, to divest itself of all improper pre. ,. . , ... ... judices, m deciding on this important question. 1 hose counsel were also pleased to warn us of the consequences of a decision, one way, in reference, principally, to the anarchical principles prevalent at the time of the argument, (b) in a particular section of the union. They ought to have remembered, that this court did not select the time for bringing this case to a decision, (c)‘ and that it is not for it, to regard political consequences, in rendering it’s judgments. — They should also have recollected, that there is a Charybdis to be avoided, as well as a Scylla ; that a centripetal, .as well as a centrifugal principle,.exists in the government; and that no calamity would be more to be deplored by the American people, than a vortex in the general government, which should ingulph and sweep- away, every vestige of the state constitutions-.
*27 I will consider the case before us, under the following general points of view.
I will enquire--1st, whether the twenty-fifth section of the judicial act, so far as it relates to the case before us, is justified by the constitution ? 2dly, whether this case comes within the actual provision of that section ? and 3dly, whether this court has power to declare the negative of both or either of these propositions, if it’s opinion should incline it to do so ?
Before I go, particularly, into these questions, it may be proper to rid the case, of the influence of a number of opinions, which were quoted by the appellee’s counsel. Among many others of minor character,and which, therefore, will not be particularly noticed, they were pleased to quote, very much at large, the opinions contained in the publication styled “ The Federalist,” and those delivered by the members of congress, at the time of passing the act in question. While I shall never hold myself bound, by the opinions of any individuals, further than they appear to me to be correct, it may be proper to give an answer to the pretensions of such as challenge a superior degree of confidence. Of this character, the two classes of opinions just mentioned, may plausibly be supposed to partake. With respect to the work styled “ the Federalist,” while it’s general ability is not denied, it is liable to the objection, of having been a mere newspaper publication, written in the heat and hurry of the battle, (if I may so express myself,) before the constitution was adopted, and with a view to ensure its ratification. It’s principal reputed author was, an active partizan of the constitution, and a supposed favourer of a consolidated government, (a) It is also *28 liable to the objection, that while it contains an ample stock °f principles, to bear out every opinion I have formed on this subject, its conclusions, in relation to the particular question now before us, go to prove too much : they go to authorise an appeal from the highest State Courts, to the inferior Federal Tribunals 1 (a) With respect to the opinions of the members of congress, who passed the judicial act, I had not expected that they would have been quoted, to prove it constitutional. Their opinion was already manifest, in the act itself, and it required the opinions of others, at least, to corroborate and support it. The reiterated opinions of the same men, gains nothing, on this question of constitutionality, whereas the opinion of others, however insignificant, might have been of some importance, to shew a concurrence of sentiment, on the subject. This quotation however proves another thing tending, essentially, to weaken the authority of these opinions. It shews that the judicial act, in all its parts, received far less discussion in congress, at the time it was passed, than the single point now in question, has received in this court. That point was not then considered or discussed, in an individual and insulated manner. This was, perhaps, unavoidable, as the whole government was to be then, forthwith, organised, and time was very pressing. It is not wonderful, therefore, that an act passed under such circumstances, should be found to have violated the constitution» in some'of its parts ; an instance of which has been detected and admitted, by the Supreme Court of the United States itself, in the case of Marbury v. Madison. (b)
It was argued by the appellee’s counsel, that both these classes of opinions were entitled to great weight, as being *29 contemporaneous expositions of the constitution, by men who had a great agency in forming and putting the same into operation. Whatever weight may be attached to contemporaneous exposition, in other cases, little credit is certainly due to the construction of those, who were parties to the conflict, and which were given before the heat of the contest had subsided, or their passions had had time to cool: and as to the advantages supposed to have been gained, from their having formed the constitution, which is expounded, that circumstance is in entire conflict with a principle, deemed vitally important to free government, by all enlightened writers, “The Federalist” not excepted,(a) that .the power of making and expounding a law, or constitution, should not be blended in the same hands.
Throwing out of view, all these opinions, therefore, except so far as I may think them correct, and use them for the purpose of illustration, and taking for my guide the constitution, which cannot err, I will examine these important questions. I will also avail myself of such principles, as all the enlightened friends of liberty concur in, as essential to preserve the rights and promote the harmony of both governments. As a work containing a just exposition of these principles, I will, occasionally, refer to the celebrated report to the Virginia Legislature, in the year 1799. In addition to other claims to respect, it is to be remarked, that this document contains the renewed sense, of the people of Virginia, on the important subjects to which it relates ; a sanction deemed important enough, in some of the slates,(b) to operate an amendment to their constitutions — and that it had a principal influence in producing a new era in the American republic.
I. We comernow to enquire, whether the twenty-fifth section of the judicial act, so far as it relates to the case before us, is justified by the constitution ? and this question again branches itself into two enquiries — 1st. Whether the constitution gives any power to the Supreme Court of the United States, to reverse the judgment of the Supreme Court of a state ? and 2dly, if it does, whether if authorises the limited *30 and partial power of revisal, contemplated by that section? I beg it to be distinctly understood, that I confine my enquiries, exclusively, to the actual point now under consideration — • namely, one relating to the construction of a treaty. I do not stop to enquire, whether a controlling power exists in the Supreme Court, in relation to any other class of jurisdiction, embraced by the second section of the third article of the constitution. It may not follow that because these are comprehended in the same article with the one before us, they necessarily stand upon the same, and no other foundation. It is possible, that various considerations, resulting as well' from other provisions of the constitution, as from the nature of some of the other cases of jurisdiction, may operate a difference. On these points, however, I have not stopped to form an opinion — I confine my enquiries to the single question now actually before us.
In order to understand that question correctly, it is proper to recollect, that the government of the United States is not a sole and consolidated government. The governments of the several states, in all their parts, l’emain in full force, except as they are impaired, hy grants of power, to the general government. It is not only true, oft general principles, that this may be the case of governments in general, but all the enlightened friends of liberty agree that it is, emphatically, the case, as to our own confederated government.
As a proof of the first position, it is laid down in Vattel,(a) that several sovereign states, may unite themselves together, by a perpetual confederacy, without each, in particular, ceasing to be a perfect state — rthat they will then form a federal republic, and that each state will remain independent, but will continue liable to fulfil the engagements into which it has entered, - As to our own particular government, this position is not, at this day, necessary to be. proved. It has grown into a maxim. It has run through the general government, in all its modifications and changes — from the articles of confederation, in which it is declared (art. 2d,) that “ each state retains its sovereignty, freedom, and independence, and every power, jurisdiction, an4 right, which is not, hy this con-. *31 federation, expressly delegated to the United States, in Congress assembled,” to the present constitution of the United States, which has provided, by thé twelfth amendment, that u the powers not delegated to the United States, by the constitution, nor prohibited by it to the states, are reserved to the states x’espectively, or to the people.” — And even in the short interval between the extinction of the articles of confederation, and the adoption of the amendment, last mentioned, the principle embraced by that amendment, was esteemed by all parties, as a part of the constitution itself.(a)
If, after the explicit amendment last mentioned, any doubts could still exist, on this subject, they will be dissipated by the most unexceptionable authorities. In the report to the Virginia Legislature, before mentioned, for example, that body has resolved (b) that “ it views the powers of the federal government, as resulting from the compact to which the , - states are parties; as limited by the plain sense and miention of the instrument, constituting that compact; and as no further valid than they are authorised' by the grants enumerated in that compact.” Again it is resolved, (c) that “ if -the powers granted be valid, it is because they are granted, and if the granted powers are valid, because granted, all other powers not granted, must not be valid.” It is also further resolved, (d) that “ whenever a question arises, concerning the constitutionality of a particular power, the first question is, whether the power be expressed in the Constitution ? If it be, the question is decided — if it be not expressed, the next enquiry must be, whether it is properly an incident to an expressed power, and necessary to its execution
So it was unanimously resolved, by the Supreme Court of ihe State of Pennsylvania, in the case of Commonwealth vs. Cobbet, (e) (a case to be presently more particularly noticed.) that before the Constitution of the United States was adopted, the several states had absolute and unlimited sovereignty, within their respective boundaries, and all powers, legislative, executive, and judicial, except as they had been granted away, by the articles of confederation, and. that they now *32 enjoy all those powers, except such as have been granted to the government of the United States.
■ It results from this diversity in the two governments, that5 whereas, in a controversy respecting the constitutionality of a state law, it must be shewn to be unconstitutional, a law of the General Government must be proved to be constitutional j which can only be by shewing, that the power to pass it has been granted.
As to the criterion of a power’s being granted, or not granted, no resort ought to be had, to the general and extensive words used in the preamble to the Constitution. It was resolved by the Virginia Legislature in acting upon the rePort before mentioned, (a) that “ it is contrary to every acknowledged rule of construction, to set up the preamble in opposition to the plain meaning expressed in the body of the instrument — that a preamble usually contains the general motives or reasons for the particular regulations or measures which follow it, and is always understood to be explained or limited by them; and that, in the present instance, a contrary interposition would have the inadmissible effect of rendering nugatory or improper, every part of the Constitution which succeeds the preamble.” It was further resolved that the general words in the, preamble in question, would the rather be excluded from having that extensive influence, because they were copied into the present Constitution from the eighth of the articles of confederation, (b) and in that government, owing to the admitted narrowness of it’s powers, no pretence existed, for saying that they had this extensive effect. Again, it was resolved, that this extensive construction would leave the judiciary entirely in the dark, as to the limit which bounded the legislative power, and consequently, without any adequate means of checking undue extensions thereof, as it must be obvious, that all measures tending to promote the general welfare, &c. <{ must be questions of mere policy and expediency, on which, legislative discretion alone, can decide, and from which, the judicial interposition and con-tr°l> are completely excluded.”(c)
These principles and authorities equally shew, that a pow *33 er ought not to be considered as granted, because, in the opinions of the Judges expounding the Constitution, it ought to have been granted. This point, as to them, is entirely coram non juclice. The people, alone are competent to decide it, and they have decided every power to be withholden, which has not been legitimately granted. Their will is supposed to be in accordance with their expressions : but if this were even otherwise, the answer to the Court would be,

quod -volucrunt, non dixerunt

In deciding whether the jurisdiction given to the Federal Courts, by the constitution, is confined to those courts, or is extensive enough to controul that of the State Courts also, in the case of treaties, the first remark which occurs, is, that it would be difficult to draw the line under the actual provisions of the constitution, between a total and partial interference. The first, as well as last, depends upon the discretion of congress, and yet it can hardly be presumed that the constitution intended that the State authorities, on this subject, should be wholly invaded and set aside, when, in the sixth article thereof, it recognizes the power of the State Judges, over treaties, and provides for their being sworn to observe them.
It is next to be observed, that, naturally the jurisdiction granted to a government, is confined to the courts of that government. It does not, naturally, run into and affect the courts of another and distinct government; whether that government operates upon the same, or another tract of country. In relation to another and distinct government, acting upon another territory, the position is undeniably clear: nor is it less so, in the case before us, if the before mentioned ideas relative to the nature and effect of federal republics, in genei’al, and ours, in particular, arc correct.
If this principle be true, in general, it will become so, a fortiori, if, in all the other parts of the constitution, on the subject of jurisdiction, the Federal Courts are alone contemplated ; and if, in all other instances, the federal authorities act directly upon the people, and not through the me *34 diiim of those of the states. Both of those positions appear to me, to be unquestionably true.
As to the first: — it will be seen, that the first section, of the third article of the constitution, relates solely and exclusively, to the Courts of the United States. It provides for their establishment, for their tenure in office, and their salaries. It has no eye to the state tribunals. So in the last clause of the second section of the third article, providing, that the trial of all crimes shall be by jury, and be held in the state in which such crimes shall have been committed, the Federal Courts are, exclusively, contemplated: it would have been absurd, to have provided, that the courts of a state, which has no jurisdiction beyond its limits, should be held within those limits. This clause, then, of the very section in question, in this case, being, undoubtedly, confined to the Federal Courts, it would clearly follow, in a case of doubt, that the whole section was subject to the same restriction. The same restriction is kept up, in the amendments subsequently adopted in the constitution. In the eighth amendment, it is provided, that the accused shall have a right to a speedy trial, by a jury of the state and district in which the crime shall have been committed ; a provision wholly superfluous and absurd, as relative to the State Courts. So in the ninth amendment, providing that in cases of the value of twenty dollars, the right of jury trial shall be preserved, it will not Be contended, that it relates to the jurisdiction of the State Courts; as most of the State Constitutions had, already, provided for the inviolability of jury trial, and the State Governments always claimed and exercised the power to say-under what limitations and restrictions the jury trial shall prevail in their courts. It is also to be borne in mind, that one' of the last amendment's to the constitution, which declares, that the judicial power of the United States, shall not be construed to extend to suits brought against a state, by citizens of another state, or of a foreign state, is confined to the Federal Courts, in exclusion of those of the states : for, if the State Courts were also inhibited from this jurisdiction, the parties last mentioned would be'left without any re *35 dress whatever, when aggrieved by a state ! If, then, in every other part of the constitution, which respects jurisdiction, the Federal Courts, alone, are contemplated, and if, in an important clause of the very section now in question, the restrictive construction is found to prevail, it would seem a natural consequence, that it should prevail, also, in the re maining part of that section.
If, in addition to these considerations, it be also recollected, that the Constitution of the United States in almost no other instance, acts through the governments of the several states, the probability will be increased, that it did not mean to act through them, or intermeddle with them, in the case in question. The great grievance complained of under the articles of confederation, was, that they acted only through the states, which states palsied the arm of the general government, at their will and pleasure. To remedy this evil, an entire new system was adopted, by which the general government acted directly upon the people. No instances are at present recollected in which the co-operation of the State Governments is necessary, but for the purpose of electing a president and senators. In all other instances the governments are entirely separate and distinct: and every provision of the constitution, will be construed in reference to this feature of the government.
Bearing these principles in mind, let us proceed to en-quire into the meaning of the second section of the third article of the constitution, so far as it relates to the case before us. That section is in the following word?, viz.£i The judicial power shall extend to all cases in law and equity arising under the constitution, the laws of the U. S. and treaties made, or which shall be made under theirauthority,” &c. That section of the constitution, follows immediately after another section which speaks only of the judicial power “ of the United States" and which is thereby declared to be vested in one Supreme Court and such Inferior Courts as Congress might ordain and establish. When, therefore, the second section speaks of “ the judicial power,” simply, it means the judicial power of the United States, as contra-distinguished from *36 that of the several states, and as vested in the Supreme Court, and the Inferior Courts to be by congress established. It is consistent with every rule of fair construction, to transplant the words “ of the United States,” from the first section, into the second, and thus transplanted, every possible pretence is done away, that the clause just recited any more relates to the judicial power of the several states, than does the clause immediately preceding it, which is exfiressly confined to the judicial power of “ the United States.” The same inferences would' result on general principles ; for the general words of a constitution, are to be applied to its own institutions, in exclusion of those of another government. This construction, too, by keeping aloof from the state jurisdictions, will keep up and perfect the symmetry between this and every other part of the constitution, as I have already attempted to shew; and be in perfect unison with the principles that each government contemplates, and only contemplates its own judiciary, and that the operations of the general government are in this, as in other cases, distinct from those of the states, and are neither dependent on, nor intermingled with them.
It is here to be remarked, that the judicial power of the United States, is to be .determined by the suit or action being proper for the cognizance of their courts, and being actually instituted or brought therein. If brought or instituted in the courts of another government, though they may involve ■the construction of the constitution, laws or treaties of the United States, they form a part of the judicial power of that government, and not of that of the United States. On any other hypothesis, the judicial power of the United States would be co-extensive with the limits of the world, on the principle that the lex loci prevails every where, in the case of contracts.
This judicial power is to “ extend to” all cases, 8tc. It is here-proper to recollect, that the government of the confederation had, also, a court or courts ; but they had only a very narrow or limited jurisdiction, (a) and it was the object of the constitution, to extend the jurisdiction of the Federal Courtn, *37 to be. then established, beyond that of those which before existed. This word “ extend,” is fully satisfied, by being-confined to the Courts of the United States, although the courts of other governments, should also have a jurisdiction over the same subjects. The word, according to the best lexicographers, means to widen or enlarge ; (a) it has no sense, which goes to the exclusion of another jurisdiction. But for the previously limited jurisdiction of the Federal Courts, and which it was the object of this article to enlarge or “ extend” the phraseology would probably have been, that the Courts of the United States shall “ have jurisdiction in” all cases, &c. Had this form of expression been used, no doubt could possibly have existed, but that the jurisdiction of the Courts of the States, would have been left untouched. So if the amplified and varied form of expression before mentioned, had been used, namely ; that the judicial power “ of the United States,” which is vested in one Supreme Court, and such Inferior Courts as congress may establish, and which courts shall have jurisdiction in all cases of law and equity, See. no scintilla of doubt could possibly have remained, but that the clause would have been confined 10 the jurisdiction of the Federal Courts, in exclusion to that of the State Courts.
But it is argued, that the power is gained to the Supreme Court, to control the judgments of the State Courts, under the second clause of the second section of the third article of the constitution, which says, that “ in all the other cases before mentioned,” [two classes being excepted, in which the Supreme Court is declared to have original jurisdiction,] “ the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as Congress shall make.” Having endeavoured, to shew, as above, that the first and third clauses of this section, relate exclusively to the jurisdiction of the Federal Courts, and do not extend to that of the State Courts ; having also, endeavoured to shew, that every other part of the original constitution, and its amendments, is subject to the same restriction, it would seem to be a reasonable infer *38 ehce that this last and solitary clause should receive a similar construction. The general principle is, that a constitution settles the powers and arranges the jurisdiction of its own Courts, and not those of another government; and although the convention had the power to affect also, those of the states, this principle will still prevail, unless it clearly and legitimately appears to have been intended to be abandoned. .The question then recurs, under the actual provisions of the constitution, was that instrument the settling the jurisdiction of its own Courts, or those of a different government ?
In order to elude the force oí the principle just mentioned, it is contended that the Courts of the several states are to be considered quoad this case, as Courts of the United States. They are said to be, more emphatically when considered in relation to the Courts of the United States, ^ parts of one whole (a) that is, that they are quoad the case before us, apart of the Courts of the United States. They becarpe so, qnder the provisions of the judicial act, only after they had given an opinion in a certain way, whereas, until they had given such opinion, or in event of their giving it the other way, they remained the Courts of the several states. If'they arc considered as the Courts of the several states, then here is the plain case of the judiciary of one government correcting and reversing the decisions of that of another. If, on the other hand, they are considered as Courts of the United States, they become so by implication, and without having been appointed, commissioned or paid by the United States, and without being impeachable by the United States. If the State Courts can be thus converted into Federal Courts, it is'evident, too, that Congress may affect their independence as State Courts, and by throwing on them a niass of federal jurisdiction, bearing no proportion to the salaries they receive from the states, actually drive them out of office ! — And whence does this implication arise, in the case in question ? From the circumstance of the Courts of the states, having, in the course of their ordinary jurisdictipn, incidentally acted upon the constitution, laws or tretu. *39 ties of the United Slates ; a circumstance which would equally make the Supreme Court of Calcutta, a part of the judicial system of the United States, when enforcing the laws of this country in that. But this is not all — It becomes necessary, and by the like implication, for the Courts of the States — even for the Supreme Appellate Courts of the States, to spread the facts upon the record, without which the Courts of the United States cannot act upon the subject, This idea, though essential to the exercise of the appellate power, is utterly at war, both with the character of a Supreme State Court, as such, and with the right of the States to regulate the proceedings of their own Courts. It was resolved by the Virginia Legislature, in acting upon the report aforesaid, (a) that the appellate jurisdiction given by the clause in question did not extend to criminal cases, depending even in the Inferior Federal Courts, notwithstanding the generality of the terms used, because jury-trial was secured in such cases, by the constitution, and was not a subject of appeal. This argument holds much more forcibly, In the case before us, both because the terms used are fairly satisfied, by referring them only to the federal tribunals, and because they cannot reach the Courts of the States, but by passing into another government, sinking the character of the Supreme Courts of the States, into mere inferior tribunals, and invading the heretofore exclusive right of the States, to regulate the proceedings of their own Courts. Again, in order to authorize the re-examination of facts, in the Supreme Court, a course contrary to the general proceedings of appellate Courts, it was found necessary to provide expressly for it, in the constitution. Had this not been done, that Court would have been confined to the record, as in other cases. This provision is, by analogy, conclusive to shew, that the appeals here intended, are only those from the Federal Courts. Had it been intended to trench upon causes abiding in the State Courts, also, the most express and explicit words would have been used, to aflecluate so urn; - sual and delicate a power. As such words are not used it. is a fair presumption that this was not intended.
*40 But, what is this implication, by which this effect is to be produced ? By which a power is to be taken from the State Governments, and vested in that of the Union, and the Courts of the former taken into the service of the latter ? There is no iota of expression in the constitution, which either takes it from the States, or gives it to the United States. If it be said, that the implication arises from the nature of the power, I answer, that that power, when exercised in a State Court, is a part of the judicial power of the States, and not of that of the United States, as I have already endeavoured to shew. What, then, do the Gentlemen Contend for, but a power neither expressly granted to the General Government, nor taken from the States, nor forming a part of the judicial power of the United States ? — If this mode of deducing power be adequate to the purpose, it was very unnecessary, indeed, for the constitution, after having, in the eighth section of the first article thereof, expressly granted to Congress, certain important and necessary powers, to go on, in the tenth section, and expressly inhibit them to the States. If, in this instance, both a grant of the powers to the United States, and a denial of them to'the several States, were deemed necessary to carry the powers to the General Government, what are we to say of a case in which there is neither such grant, nor such denial, to be found in the instrument ? If all this caution was deemed necessary, through a becoming respect for the rights of the States, and a just objection to the implication of power, in regard to powers, [those of declaring war, and granting letters of marque and reprisal, for example,] emphatically belonging to the government of the union, and no how appertaining to those of the states, is it not much more necessary, in relation to such as are no how essential to the United States, and exclusively' belong to the several States, as forming a part of their judicial power ? If the convention deemed it necessary to write with a pen of steel, in relation to the stronger case just mentioned, is it to be believed they would have conveyed, in water-colours, the weaker power now in question ?
I have thus endeavoured to shew, by the preceding detail, *41 that none of the clauses of the constitution, before mentioned, relate to the State Courts, or to the causes therein depending ; that the power now m question, has not been expressly granted to the General Government, nor inhibited to „ . . , those of the states ; that it exists ho where but in the general words of the preamble to the constitution, and is not a necessary incident to any power, which has been specifically granted. It is not necessarily incident to the power of the appellate Court of one government, to correct the proceedings of the Cotlrts of another, though acting upon the constitution or laws of the former. I have also endeavoured to shew, that the pretence of a constructive power, arising from the general words of the preamble to the constitution, is not only fatal to the principle, that the government of the United States is one of limited and granted powers, and leaves no limit to the discretion of the legislature, but is peculiarly objectionable as relative to the exercise of the powers of the judiciary. It is only, however, under these general terms of the preamble, and on the ground of an imagination in Congress and the Federal Judges, that the peace of the union is to be only preserved thereby, that the jurisdiction in question has been assumed. This is not the fact ; and if it were, those authorities ought still to have waited, until the power had been constitutionally conferred upon them.
An idea was nearly taken up by Congress, founded upon the opinions of the federal writers, (a) that the state judiciaries could not be considered as impartial in the case of treaties, and would embroil the United States with foreign nations. This disparagement of those authorities, finds no counterpart in the constitution itself. It is true, that the sixth article thereof declares, that the constitution, laws, and treaties of the United States, shall be the supreme law, and that the Judges of the several states, shall be bound thereby, any thing in the laws or constitution of any state, to the contrary notwithstanding. This article merely declares the supremacy of the constitution, laws and treaties of the United States, over those of the several states, but evinces no distrust *42 0f the state Judges. The only circumstance from which the contrary could possibly be inferred, is the oath imposed on them by the said article : but that inference is completely demolished, by the considerations, that the oath is a general one, to support the constitution of the Uuited States, and is required to be taken by the Federal as well as the State .Judges. But if such distrust was any how deducible from this clause of the constitution, the antidote is, also, provided therein : it exists in the oath imposed on them, as aforesaid, to support the constitution of the United States. This is, in that view, if I may so express myself, the agreed remedy for the evil; and, after this, it does not lie in the mouth of any, to raise the objection. It is not for Congress to distrust those in whom the constitution has confided; to distrust them in the exercise of an ancient and ordinary jurisdiction, and which has not been taken away, or impaired by any specific grant in the constitution. While it is not intended to enter into any comparison, of the fitness of the respective judiciaries for that service, it may be asked, however, is it insinuated or expected, that the Federal Judges will yield to political consequences, and adapt themselves, in matters of treaty, to the policy of the administration ? I hope not: and yet it is difficult to assign any other ground, on which their monopoly of jurisdiction, on this subject, has been so zealously contended for.
If the power now in question belongs to the state tribunals, when attaching therein, in exclusion of the courts of the United States, that fact is well known to foreign nations, and must be submitted to by them. If it could even be deemed an outrage upon them, they must be content to receive the magnanimous answer, given by the queen of Eng^ancb t0 t!ie Russian emperor;(a) namely, that she was not warranted by the laws of England, in doing the arbitrary act which he required. I presume that the British nation, at least, would not quarrel with us, for following what has ever been deemed a proud example, in her own annals. They would not condemn us for adjudging the decision of that tribunal to be final, which her subjects, with a choice of juris *43 dictions before them, elected to resort to, and which, (under the actual law of congress on the subject,) is final, if found in their favour.
The power now contended for, is no such mighty boon, in favour of the state judiciaries, as may have been supposed. It is exercised, as I have already remarked, by the courts of every civilized nation. On the ground of the contract following the person of the debtor, the laws of the country in which it originated, (including treaties and all,) are to be decided on, by foreign tribunals. They, indeed, would wish to conform to the constructions of the courts of the state in which the contract originated ; but their decisions, if otherwise, are nevertheless final. Why shall the sovereign states of America, sovereign in l’espect of all powers not clearly and specifically granted to congress, not possess the rights claimed and exercised by every other state 1 Why shall foreign nations require the head of a confederated government! t° exercise powers not granted to it by the constitution, and which would embroil it with the members of which the confederacy is composed ? Why shall we run this risque, and establish these preferences, in behalf of the subjects of nations, certainly yielding us no equivalent therefor, and, at most, permitting foreigners to stand on the same footing, in their courts, with themselves ?
It is here to be observed, that in most of the suits depending in this country, in which foreigners are parties, they will be plaintiffs and not defendants. They will not be defendants, because, in general, they remain in their own countries. As plaintiffs, they have elected their jurisdiction, and there is no hardship in their being compelled to abide by it; and even in the'few cases in which they may be defendants here, this election is also extended to them, by the twelfth section of the judicial act; the constitutionality of which, however, I do not mean to enquire into. In every instance, therefore, in which a state tribunal passes upon the cause of a foreigner, he has made his election of the state judiciary. But if this were even otherwise as to foreign defendants in the state courts, as, in most instances, foreigners; ill be plaintiffs when *44 suing in this country, the rule of construction forcibly applies, that laws are to be expounded in relation to those cases, qua frequentius accidunt.
I have said that this controlling power was not essential to preserve the peace of the nation. Without going into other considerations, or authorities on the subject, it is sufficient to remark, that the American people have decided, that it is no cause of offence to foreign nations, to have their causes decided, and exclusively and finally decided, by the state tribunals. In that amendment to the constitution, by which the jurisdiction of the Federal Courts is prohibited, in suits brought against the states, by foreign citizens or subjects, this construction is most undoubted, and has never been com1? plained of. Since the adoption of that amendment, the election of jurisdictions has been entirely taken away from foreigners, in all suifs against the states, and those suits can, now, be only brought in the state courts, in exclusion of every qther ; and that, too, in cases in which, from the circumstance of the states themselves being parties, it might, perhaps, be plausibly argued, that the judges of the state courts were not free from bias. I consider that this clear declaration by the American people, and yvhich has never excited a murmur in foreign nations, has put down the notion now in question. It has settled the question forever, that it is no cause of war to foreign nations, that the state judiciaries should finally decide the causes elected to be brought therein, by their subjects. It has, consequently, overthrown the only foundation on which the whole superstructure, of the twenty-fifth section of the judicial act, has been supposed to rest.
That pretence is the only one on which the power in question could be attempted to be justified. That of rendering uniform, all judgments in the case of treaties, is still less tenable, and is even not attained by the actual provisions of the judicial act. Under that act, the appeal equally lies to the Supreme Court of the United States, where such uniformity already exists, and is denied where it is wanting. If, for example, the Supreme Court of the United States has *45 decided against a treaty, and the Supreme Court of a state decides the same way, there this uniformity already exists, and yet the appeal is allowed. If, on the other hand, the former court decides against a treaty, and the latter in favour of it, this uniformity is wanting, and yet the appeal is denied t
The preceding remarks apply, a fortiori, to the limited and partial power of reversal, conferred on the Supreme Court by the twenty-fifth section of the judicial act. It is, indeed, the natural offspring of the parent from which it has proceeded. The novel spectacle of a judgment being final or not, as it may chance to be one side or the other, and of a court being of the last resort or otherwise, as its decision may happen to have been for one or other of the parties, is worthy of a system which only admits the judges to be impartial on one side of a given question ! That, however, is a chimera, existing only in the imagination of a former congress. It was an after-thought, well calculated to aggrandize the general government, at the expence of those of the states ; to work a consolidation of the confederacy; and can only be pretended to be justified by the broad principles of construction, which brought the alien and sedition laws into pur code ! I would consign it to a common tomb with them, as members of the same family, and originating in the same era of our government.
It was contended by the appellee’s counsel, that the power now in question, results to the Supreme Court, from the concurrent power given to the state courts over the same -subjects. The idea of a concurrence of power, is at war with that of one of the parties possessing a power of reversal and control over the other. It may be further remarked, that this concurrent power is not derived to the state courts, from any grant or concession in the constitution. It results to them, on general principles. It is common to them, with the courts of every other civilized nation, in respect of civil causes — and no argument based merely on this principle, can erect the courts of the states into inferior federal courts, or give the courts of the union a controlling power over them. *46 which would not, under like circumstances, have a co-extensive effect over those of every other country.
■ I have already alluded to another objection to the power granted by the twenty-fifth section of the judicial act, and and that is, that it erects the courts of the several states into Inferior Courts, in a manner not warranted by the constitution. The Inferior Courts contemplated by the constitution, must not only be “ ordained and established” by congress, but the judges thereof must be appointed by the president, and receive an adequate commission and compensation for their services. Nothing of this sort exists in relation to this court, and yet, quoad the case before us, this court is taken into the service of the United States, and made one of their Inferior Courts. This is proved, both by the reversal and mandate now before us, and by the emanation of the writ of error. That writ is defined to be, “a commission by which the judges of a Superior Court, are authorized to examine the record on which a judgment was given in an Inferior Court, and to affirm or reverse the same.”(a) This court, therefore, being called upon to execute the duties of a court, inferior to the Supreme Court of the United States, and yet not being constitutionally established as such, ought not to exercise the same.
II. I am now to enquire, secondly, whether the case before us comes within the provision of the twenty-fifth section of the judicial act.
That section provides, “ that a final judgment or decree, in any suit in the highest court of law or equity of a state, in which a decision in the suit could be had, where is drawn in question, the validity of a treaty, or statute of, or an authority exercised under the United States, and the decision is against their validity, or where is drawn in question, the validity of a statute of, or an authority exercised under any state, on the ground of their being repugnant to the constitution, treaties, or laws, of the United States, and the decision is in favour of such their validity, or where is drawn in question, the construction of any clause of the constitution, or of a treaty, or statute of, or commission held qnder the United States, and *47 the decision is against the title, right, privilege or exemption, specially set up or claimed, by either party, under such clause of the said constitution, treaty, statute or commission, may be re-examined and reversed, or affirmed, in the Supreme Court of the United States, upon a writ of error, the citation being signed,” See. But it is further provided therein, that “ no other error shall be assigned or regarded, as a ground of reversal, in any such case as aforesaid, than such as appears on the face of the record, and immediately resfieem the before mentioned questions of validity or construction of the said constitution, treaties, statutes, commissions or authorities in dispute.”
While the two first members of this section are confined to cases, in which the validity of a treaty, &c. is decided against, or held to be outweighed by the conflicting authorities of the several states, the third member (taken in exclusion of the proviso) would seem, by its terms, to apply to cases in which the construction of a treaty occurs, and the decision is against the title, &c. set up under the same ; although the authority and application of the said treaty should be expressly admitted, both by the adverse party and the. court, and the decision should, in fact, be made upon grounds of a mere ordinary nature. But this construction can never be right — it is not justified by even that unwarrantable jealousy of the state courts, which gave rise to the section in question — and would invade, without even a plausible pretext, the jurisdiction of the state courts, upon points of their mere ordinary jurisdiction, in ail cases, at least, in which a treaty, Skc, should come in question, and the decision was, on any ground, adverse to him who relied upon it. It would give an appeal, although the construction of the treaty, Sec. neither came in question,nor was decided against, but was even permitted to operate in the party’s favour — who, however, or> some other and ordinary ground, was stopped from succeed ing in the cause. The construction of the act, however, does not depend merely upon the last member of the section. By the exception or proviso therein also contained, no other error is to be assigned or regarded, than such as *48 aPPears on the face of the record, and immediately respectó ^ie constrnction of the treaty relied on. This proviso or exception, especially when taken in connexion with a princiP'e which pervades all appellate courts, namely, that a party shall not assign for error, that which is beneficial, or not injurious to him, confines the appeal to cases in which, as it appears from the face of the record, the treaty both came in question, and was decided against, to the injury of him who relied on it. In other words, the exception of the clause restricts the preceding words of it, which might have otherwise been considered more extensive, and produces a symmetry between all the members of the section.
This view of the subject would produce a correspondent right to the party grieved by the construction of the court below, to make the point of the decision upon tlie treaty, a part of the record, that is of the judgment; as well to give, jurisdiction to the appellate court, as to afford a foundation on which the errors, permitted by the act to be assigned, are to be erected. But to suppose that a court having only jurisdiction in a single case, is not to show that that case has actually occurred, would be as novel in the history of judicial proceedings, as it might be fatal to the ordinary grounds of jurisdiction of the several states — grounds, on no pretence, requiring the corrective power now contended for, and as to which, the state courts possess- the undoubted privilege even to err, without remedy.
In the case before us, while it is admitted that the appellee was a British alien, and set up the treaty of peace as a ground of defence against the appellant’s claim, it was far from being the only ground of that defence, or on which only the decision of this Court, or that of the District Court, could have turned. The case agreed in the cause, consists of fourteen different findings, most of which are of a mere ordinary character. For example, as this suit respected land lying in the territory granted by the English crown, to Lord Fairfax, and also granted to the appellant by this Commonwealth, since his death, one of those findings drew in question the point, (possibly never before solemnly settled by this *49 Court,) whether Lord Fairfax had an allodial, or only a more scignioral right to the land. Under the last idea of his title, a judgment in favour of the appellee, ought not, flerhafis, to have been rendered, although in other respects, the treaty should have been in his favour. That would have been a mere ordinary ground of jurisdiction, no how within the meaning or purview of the 25th section : and many other points of the, same character, may be found to exist in the case agreed. Whatever the fact may have been, the most the Supreme Court of the United States is permitted to know, is tobe collected from this Court’s judgment of reversal ; and that judgment is general, and only takes the ground, that the law, on the case agreed, is, on some point, in favour of the appellant. It may well have been, for aught appearing of record to the contrary, that the judgment was rendered Upon the before-mentioned question i’especting the nature of Lord Fairfax’s title, or on some of the other ordinary grounds of enquiry submitted by the c^se agreed : or it may be taken to have been rendered (as the fact really was) upon the act of compromise of 179 6, which, although it was posterior to, and formed no part of the case agreed, was considered by the Court, as a letter addressed to them, by the appellee, authorizing it to render the judgment, pursuant to the provisions of that act. But if, in truth, the judgment of this Court wan rendered upon the construction of the treaty, it is the appellee’s misfortune, that he did not manifest it to the appellate Court, by spreading it upon the record.
Thus stands the case upon the record, by which alone the Supreme Court of the United States should have been governed, in assuming a jurisdiction in the case. But if that Court had held itself at liberty, to go out of the record, and resort to those reports, which are deemed authentic evidences of the decisions therein contained, its jurisdiction, in this case would have been cut up by the roots altogether. The report of the case (a) would have shewn, that if the treaty of peace was at all decided on, by the District Court, its decision /hereupon, was in the appellee’s favour, and that that decision *50 was, in effect, affirmed, as to that point, by the equal suffrages of the Judges of this Court upon it. That report does not merely omit to state, as the record does, whether the treaty was decided upon, or not, by this Court, and how : it goes further, and shews, that the actual decision of this Court was rendered upon another, and ordinary ground of jurisdiction — the act of compromise aforesaid : such a ground, as no error can be assigned on, under the proviso of the judicial act, as aforesaid, and as must forever bar the Supreme Court of the,United States from acting upon the case, unless wc go beyond the actual provision of the section in question, let in the power of that Court, upon grounds of a more ordinary nature, or admit that to be a ground of error, which may have been decided in the party’s favour ! — I conclude, therefore, that it does not appear from this record, that the Supreme Court of the United States had jurisdiction in the case before us, under the true construction of the act in question, and, that it appears, on the contrary, by authentic evidence, aliunde, that they hid no such jurisdiction. I cannot consent, therefore, to wave the exercise of the just and constitutional powers of this 'Court, and to register and enforce the judgment before us, even admitting the section in question to be constitutional, until I am prepared to admit, that the Supreme Court of the United States has a right to review and reverse the judgments of this Court, in all cases whatsoever ; or at least in all in which a treaty, See. may be either really or colourably relied on, as one of the grounds of defence, or claim, although the same was either not decided upon at all, or the decision was in the parties’ favour.
III. I come to enquire, in the third place, whether this Court has a right to declare its own opinions, on both or either of the questions before mentioned, if opposed to the decisions of the Supreme Court of the United States ? — ■ That 4epends upon the question first discussed : whether an appeal lies from this Court to that, or mother words, whether this Court be subordinate to that, in relation to the present subject? If it is not, however respectable that Court may be, its decisions are not binding upon this tribunal.
*51 In making a decision upon this subject, this Court does not so much decide what arc the rights and powers of the Federal Court, as what are its own. There is no position more clear than that, even in the same government, a Court may be paramount, as to some powers, while it is subordinate as to others. The General Court of this Commonwealth, for example, is the Supreme Court as to all criminal cases, though its jurisdiction is inferior to that of this Court, as to those which are civil. No person will deny, that, in relation to criminal causes, it would adjudge itself to be the Court of last resort, and would resist the encroachments of this Court upon it. It would resist, and most properly resist, an edict of this Court, condemning a citizen to suffer death, whom that Court had adjudged to be innocent. Every argument applying to justify the decision of the General Court, in such a case, would hold more forcibly in the case before us. If such resistance can be made by a Court which is, in most instances, an Inferior Court, much more can it by one which is in no instance subordinate, If it can be made by a Court, which is, in truth, a part of “ one whole,” much more can it by one which is not. If it can be made by a Court of the saíne government, with much more propriety cauitby that of a different one.
The counsel for the appellee have furnished us with a string of cases, in which the jurisdiction in question has been entertained, by the Supreme Court of the United Statcsi. They have had it in their power to do this, because the cases occurred in that Court, and not in this ; — because the man, and not the lion, was the painter.(a) It is not to be denied, that the jurisdiction now in question has been entertained by the Supreme Court in sundry instances. But that jurisdiction has gained ground by piece-meal, and has never received the solemn and deliberate discussion and decision of that tribunal. It lias been adopted, also, under a latitude of con. otruction and discretion in the Court, which is at war with the idea of limited and spe,cified powers, in the general govern ■ ment. That decision was coeval, as I have already said, with sundry acts of the National Legislature, passed upqn the *52 same principle : but while those acts have been scouted, and repealed, by general consent, under a more correct view of the constitution, the decision has been suffered to remain and to be acted on as a precedent!
I have already said, with the Virginia Legislature, (a) that j-jjg powers of the federal government result from the compact to which the states are parties; are no farther valid, than as they, are authorised by the grants enumerated in the compact; and, I will now add, by the same authority, “ that in case of a deliberate, palpable, and dangerous exercise of powers, not granted by the said compact, the states, who are the parties thereto, have the right and are in duty bound, to arrest the progress of the evil.” (b) While the states in their legislative, or even original, character, are authorised to interfere, in cases of the palpable nature just mentioned, the Courts of the Slates are also authorised to check the evil when it occurs, in the exercise of their ordinary jurisdiction. Thus in the before mentioned case of the Commonwealth vs. Cobbett, (c) the Supreme Court of the State of Pennsylvania, solemnly and unanimously refused to permit the defendant, who was an alien, to remove a cause in which he was sued by the state, in its Supreme Court, into the Circuit Court of the United States, notwithstanding the comprehensiveness of the words of the twelfth section, of the judicial act, upon this subject. That court, after declaring, in the most explicit terms, that all powers not granted to the government of the United States, remained with the several states ; that the federal government was a league, or treaty, made by the individual states, as one party, and all the states, as another; that when two nations differ, about the construction of a league, or treaty, existing between them, neither has the exclusive right to decide it; and that, if one of the states should differ with the United States, as to the extent of the grant made to them, there is no common umpire between them, but the people, by an amendment of the constitution ; went on to declare its own opinion on the subject, and overruled the motion, on the ground that the *53 sovereign State of Pennsylvania could not, on account of its dignity, be carried before that court.
One oí the appellee’s counsel was pleased to call this decision, a dictum of chief justice M‘Kean’s. I must be ex-cusen for saying it is no dictum, nor is it the sole and individual opinion,of that respectable judge. It is the solemn and unanimous decision, and resolution, of the Supreme Court, of one of the most respectable states in the Union. It contains no principle which every friend to the federative system of government, will not readily subscribe to : it exhibits no sentiment alarming to any, but the friends of consolida • tion.
It has been said, that this decision of the Supreme Court of Pennsylvania, is a single and solitary one. The question has, perhaps, seldom occurred in the state tribunals. As, however, error does not become truth, by being often repealed, neither does truth lose any of its beauty, by being seldom promulgated. Again, it has been said, that the juris? diction of the Supreme Court, has been acquiesced in, by some of the states. It has never been, before, asserted in the Courts of this Commonwealth, nor acquiesced in by them. As to the acquiescence of other states, I deem it unnecessary to go into any enquiry, on the subject. While such acquiescence, if it has existed, may be accounted for on so many grounds, other than that of an acknowledgment of the federal claim, it is sufficient for us, to say, that those decisions are not binding upon us. Other states may abandon their own rights under the federal compact, but have no power to cede or relinquish ours.
I consider this decision by the Supreme Court of Pennsylvania, as a complete and solemn authority, to shew, that in case of a difference of opinion between the two governments, as to the extent of the powers vested by the constitution, while neither party is competent to bind the other, the courts of each have power to act upon the subject.
So in the case of Rose vs. Himely, (a) it was resolved, by the Supreme Court of the United States itself, that a sentence rendered by a self-constituted body, or by a body not *54 empowered by its government, to take cognizance of the subject, could have no legal effect whatever ; that the power under which it acts, must be looked into, and its authority to decide the questions, which it professes to decide, must be considered; and that I’ne operation of every judgment must depend upon the power of the court to render the judgment, or, in other words, on its jurisdiction over the subject matter, which it has determined.
These authorities are conclusive to justify this court, in pursuing its own opinions on this subject; and I can perceive no arguments justifying the authority of the decisions of the Supreme Court of the United States, in relation to this case, which would not equally sustain its judgments, rendered upon the construction of our acts of descents, for example, should that court ever so far forget its own limited pow'ers, as to intrench on that province, also.
Upon the whole, I am of opinion, that the constitution confers no power upon the Supreme Court of the United States, to meddle with the judgments of this court, in the case before us ; that this case does not come within the the actual provisions, of the twenty-fifth section of the judicial act; and that this court is both at liberty, and is bound, to follow its own convictions on the subject, any thing in the decisions, or supposed decisions, of any other court, to the contrary notwithstanding/
My conclusion, consequently, is, that every thing done in this cause, subsequently to the judgment of reversal, by this court, was coram non judice, unconstitutional, and void, and should be entirely disregarded by this court ; that the writ of error in this case was improvidently allowed ; and that the judgment of reversal by this court, should be now cord-, fled to the Superior Court which has succeeded the District Court of Winchester, in its powers, for the purpose of being carried into complete execution.
Judge Fleming.
This cause has been justly regarded as one of the first importance, as it involves in it a great national and constitutional question of extreme delicacy; *55 and has therefore been elaborately argued with great ability, by some of the most distinguished characters of this bar ; and has also received from the court, the greatest attention and the most mature deliberation. It is fortunate and satisfactory to find, that the opinion of the court is unanimous on the important occasion, though we have to regret, that, from, a peculiar circumstance, one of our enlightened and worthy brethren did not sit in the cause ; whose opinion, (presuming he would have concurred with the rest,of the court) would have added weight to the decision.
The question now to be decided, is not whether this court erred in the case of Hunter vs. Fairfax’ — but, whether, it so, the Supreme Court of the United States has jurisdiction to correct the error?
It seems unnecessary for me to travel again over the extensive field of discussion that has been so amply and ably explored by the judges,,who have preceded me, and shall therefore not enter into abstract reasoning, but be content with briefly noticing a few of the most prominent points in the cause; in doing which, however, a repetition of many of the remarks already made, cannot be well avoided.
I shall inquire, 1st, whether the 25th section of the judicial act of Congress, so far as it respects the case before us, is justified by the Constitution ? and 2d, whether this case is comprehended within the provisions of that section ?— And, as a preliminary to these inquiries, shall take the liberty of quoting a few passages in a celebrated book, styled the Federalist, which was often cited in the arguments of this cause.
The author, a zealous friend of the constitution, avowedly an advocate for its adoption by the states ; and writing to obviate some objections that had been 'made respecting its powers, observed in vol. ii. p.'26, “that if the government be national with regard to the operation of its powers, it changes its aspect when we contemplate it in relation to the extent of its powers. The idea of a national government, (says the book,) involves in it, not only an authority over the individual citizens, but an indefinite supremacy over all per *56 sons and things, so far as they are objects of lawful government. Among a people consolidated into one nation, this supremacy is completely vested in the national legislature.
“ Among communities united for particular purposes, it is vested partly in the general, and partly in the municipal legislatures. In the former case, all local authorities are subordinate to the supreme, and may be controlled, directed, or abolished by it at pleasure. . In the latter (the case of our own government) — the local or municipal authorities form distinct and independent portions of the supremacy, no more subject, within their respective spheres, to the general authority, than the general authority is subject to them, within its own sphere. In this relation, then, the proposed government cannot be deemed a national one, since its jurisdiction extends to certain enumerated objects only ; and leaves to the several states a residuary and inviolable sovereignty over all other objects.”
The legislatures of the several states, not satisfied that the above just principles would always govern, in the construction of, or expounding the constitution of the United States, obtained an amendment thereto, explicitly declaring that “The powers not delegated to the United States, by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.”
Let us now apply those inestimable principles to the case under consideration, and inquire whether the 25th section of the judicial act of Congress, so far as if respects the case before us, is justified by the constitution ? By the third article of which, section the first — “ The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may, from time to time,ordain and establish (not naming nor squinting at the state courts). Section the 2d — in the judicial powers of the courts, the jurisdiction seems to be exclusively confined to those to be ordained and established by Congress — A second paragraph of the same section says — “ That in all cases affecting ambassadors and other public officers, consuls, &c, the Supreme Court shall have original jurisdiction. In all *57 other eases before mentioned the Supreme Court shall have appellate jurisdiction, both as to law and fact; with such exceptions, and under such regulations, as the Congress shall make” — which exceptions and regulations must, I conceive, relate to such inferior courts as, by the first section of the article, Congress may, from time to time, ordain and esta» blish; and cannot, in my apprehension, by fair construction, have relation to the state courts; .there having been no power delegated to Congress, to interfere, or meddle with them; and which do not appear by any expression in the instrument, to have been in the contemplation of the framers of the constitution — for, if they had been so, and the state courts were intended to have been subject to the appellate jurisdiction of the Supreme Court of the United States, a short sentence, or a very few words, would have put the matter out of all doubt: and I cannot presume that, when the collected wisdom of the several states was convened, and, for weeks, were deliberating on a proper system of jurisprudence, for the government of the Union, so important a matter, had the state courts been in contemplation, could have escaped the notice of them all; and have been left to uncertainty and conjecture.
It appears to me then, that the 25th section of the judicial act of Congress, not being made in pursuance of the constitution, so far as it respects the case before us, was not justified by the constitution. But admitting for a moment, that I be mistaken on this point, I proceed to inquire,
II. Secondly, whether this case is comprized within the provision of that section ? The enacting words of the section arc, “ that a final judgment in any suit in the highest court of law or equity of a state, in which a decision in the suit could be had, where is drawn in question the validity of a treaty, or statute of, or an authority exercised under the United States, and the decision is against their -validity, may be re-examined, and reversed or affirmed in the Supreme Court of the United States, upon a writ of error, &c. But no other error shall be assigned or regarded, as a ground of reversal, in any such case as aforesaid, than such as ap *58 pears on the face of the record, and immediately respects the before mentioned questions of validity, or construction of the said constitution, treaties, statutes, commissions, or authorities in dispute.” The only article enumerated in the above recited clauses brought in question in the case of Hunter vs. Fairfax, on which the mandate under consideration was founded, was the validity of the treaty between the United States and Great Britain, in the year 1783 — and does it appear on the face of the record that the decision was against its validity ? — In my apprehension it does not so appear; for the very reverse was the fact: and if that cause had depended altogether on the -validity of the treaty, the judgment, on the appeal to this court, would have been in affirmance of that of the court below, in favour of Fairfax, or rather, of his heir Philip Martin, the appellee.
It is worthy of remark, too, that when Denny Fairfax was impleaded by blunter in the District Court of Winchester, he had an election to remove the cause into the nearest circuit court of the United States ; of which privilege he did not think proper to avail himself, but chose to rest his cause with the state courts.
It appears to me, first, that the 25th section of the judicial act of Congress, so far as it respects the case before us, is not justified by the constitution. And secondly, that this case is not comprised within the provision of that section. And am of opinion, therefore, upon both points, that it is inexpedient for this court to obey the mandate under consideration. And that is the unanimous opinion of the court.
The following was entered as the courts opinion :
“ The court is unanimously of opinion, that the appellate “ power of the Supreme Court of the United States, does not “ extend to this court, under a sound construction of the cons' stitution of the United States ; — that so much of the 25th “ section of the act of congress, to establish the judicial courts “ of the United States, as extends the appellate jurisdiction “ of the Supreme Court to this court, is not in pursuance of “ the constitution of the -United States j that the writ of *59 • error in this case was improvidently allowed under the au- “ thority of that act; that the proceedings thereon in the Su- “ preme Court were coram non judice in relation to this court! “ and that obedience to its mandate be declined by this court.”

 See Resolutions in 1799.

 Note. The effect of the extension of the appellate power of the. Supreme Court to the state courts, will be found, on a slight considera, tion, to be more repugnant to the federate character of the national government, than is at first supposed; it will give to it a strong feature of consolidated government, in the administration of the laws and acts of the federal government. On the one hand, whilst the government of the United States will operate more feebly in the exercise of its constitutional powers, through organs not directly under its control — on the other, the state courts will be made the instruments of encroachment on state rights, in a way to give greater force to violations of the federal compact-, than if the general government committed those violations through its own organs. The revision of the judgments of the state courts, by way of original jurisdiction, will be unaided by the additional weight of state adjudications founded on an implicit obedience to federal authority, and leave to the people, uninfluenced by state authority, an opportunity bet. ter adapted to the impartial investigation of the constitutionality of federal adjudications.

 Note. The duty imposed on the judges of the several states, by the 6th article of the constitution, to respect the constitution, and the laws of the United States, which shall be made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, as the supreme law of the land, adds nothing to the jurisdiction of the state courts over this subject. It may authorize the Federal Courts, when the judgments of state courts come before them, to al. low to those judgments less force than is generally accorded to the judgments of foreign courts, for the consequence of which the federal government is not responsible.

 Laws of S.vol.1 p.64

а) Not literally, but in effect.

 April 1814.

 This opinion was prepared, and ready to be delivered, shortly after the argument. The Grisis alluded to by the appellee’s counsel, has now, happily passed away.

 See the report of the Secretary of the Treasury, (Mr. Hamilton,) on manufactures, of 5th December, 1791 ; in which it is expressly contended to belong “ to the discretion of the national legislature, to pronounce upon the objects which concern the general welfare, and for which, under that description, an appropriation of money is requisle and proper; and,” he adds, “ there seems to be no room for a doubt, that whatever concerns the general interests of learning, of agriculture, of manufactures, and of commerce, are within the sphere of the national councils, as far as regards an appropriation of paoney!”

 1 Cranch,

 In 2nd Federalist, p. 326, it is saidj that whether the jurisdiction of the Inferior Federal Courts shall be original, or appellate, or both, depends on the discretion of the legislature, and the author adds, “Iperceive at present no impediment to the establishment of an appeal, from die State Courts, to the subordinate National Tribunals.” Again it is said, in p. 327, that appeals in most cases in which they may be propel-, “ instead of being carried to the Supreme Court, may be made to he to the District Courts of the Union !”

 2 Vol. p. I

 See Const, of Maryland, s. 59, &c,

 Vattel, 18.

 Federalist p.202

 Report commonly called Madison's Reporter p. 4 & 5.

 lb.p.7.

Ib. p.45,

407. (e) 3 Dallas,

fa) Report P” 44-

 Report " p,.44

 Ibid p. 13-

 Articles o confederation art, 9, sec, 3. f ’

 See Johnson’s Dictionary-

 Federal-i¿'., passim.

 Kepovt, pa.38.

 Federal-ls<5 Passim-

 1B1 Com 256.

 2 Bac. 448,

 Munf. p, 218,

 3ee ilisop’s Fables,

 Report, p.4

 lb. p. 4.

,3 Dali, pa. 342

 4 CrancÍ!, 241