BOREN, et. al. vs. M'GEHEE.

1. A payment by the sheriff, of the sum demanded by an execution in his hands, to the plaintiff's attorney, for which the sheriff received an assignment of the judgment and execution, on his own book from the attorney, made without the knowledge or consent of the defendant in the execution, is a payment and discharge of the judgment, and in law, has the same effect, and will be attended by the same results, as if made by the defendant.

2. The authority of an attorney ceases with his collection of the money demanded by the plaintiff's judgment, and does not authorise him to sell or tranfer any interest in a judgment, or in the note or bond on which the judgment is founded,—and therefore, his assignment of a judgment to a third person, conveys no interest to the third person.

3. An assignment of a judgment and execution, if made in a proper manner, is not of itself notice to any one, and therefore an assignment on the sheriff's memorandum book of executions in his hands, as the law does not require him to keep such a book, is notice to no person of the assignment, except the parties to the transaction.

4. An execution issued upon a judgment which has been satisfied, but of which satisfaction no entry is made on the record, is not void, but voidable merely.

5. A latent interest existing in the sheriff, in the avails of an execution, and not appearing on the record, will not affect a purchaser at a sale under such execution, who has no notice of the sheriff's interest.

Error to the Circuit court of Montgomery county. Trespass, upon a sheriff's deed, to try title. Plaintiff below declared against defendants, at the March

term, eighteen hundred and thirty-six of said court: for that theretofore, he said plaintiff was possessed of a certain close, to wit, part of lots numbers two and nine, in square fifteen, in the town of Montgomery, baing the north-west part of said lots, containing a certain number of feet in front, on the court house square, and extending back to Washington street, lying in the county aforesaid ; and being so possessed thereof, the said defendants, with force and arms entered said close, and ejected and expelled him said plaintiff, from said close, and ever since had retained and kept the possession thereof, and received the rents and profits therefrom arising. The suit was brought to try titles to said close, and to recover possession thereof, and also damages for the detention of the same, and for the trespasses thereon committed.

Defendants plead not guilty, and issues were taken thereon to the country.

And at September term, came the parties, and a jury, to whom the issues were submitted, and who said on their oaths, that they found the premises described in the declaration of the plaintiff, to be the property of the plaintiff, and that the defendants were guilty of the trespass, and assessed the plaintiff's damages at two hundred dollars :—It was therefore considered by the court, that the plaintiff should have a writ to obtain possession of the premises, and that he should recover of the defendant, the sum of money assessed by the jury for his damages, together with costs.

The bill of exceptions stated, that on the trial of the case, title was shewn to be in David Boren, one of the defendants. The plaintiff then produced an execution issued on a judgment rendered in the County court of Montgomery county, in November, eighteen hundred and thirty-four, and dated twelfth January, eighteen hundred and thirty-five, returnable to the May term of said court, eighteen hundred and thirty-five. This execution was directed to the sheriff of Mont-

gomery county, and bore this endorsement: "Levied this on parts of lots No's. one and ten, in the town of Montgomery, opposite the court house, known as the Montgomery Exchange, as the property of David Boren.' After the return day of this execution, the attorney of the plaintiff, as was shewn in evidence, called on the sheriff for the money due. The sheriff paid the attorney the debt of the plaintiff, and the attorney's fee, and received a transfer in these words: "For value received, I assign this judgment and execution to Bushrod W. Bell, sheriff." Signed by the plaintiff's attorney.

This entry was made on the execution docket of the sheriff. The witness stated, that the sheriff's fees and commissions were not settled at this time, nor was the county tax, judges costs and clerk's fees,—and that defendant had paid nothing, and that plaintiff had paid him no costs at the time of the transfer. The execution was in favor of Spyker & Bradford, and against David Boren, and upon a judgment. It was then in evidence that a new execution issued, returnable to the County court of Montgomery county, in November, eighteen hundred and thirty-five, and that the sheriff (B. W. Bell) exposed the lots of land sued for, to sale, on the first Monday in September, eighteen hundred and thirty-five. No evidence was offered as to what was done under the levy made on the first execution. No objection was made to the regularity of the last sale, in relation to advertisements, &c.

The defendant Garrett, exhibited a deed from David Boren to him, after the date of said judgment. The plaintiff became the purchaser at said sale, and received title from the said sheriff, dated in September, eighteen hundred and thirty-five. The deed of Garrett bore date in March, eighteen hundred and thirty-five, and was prior in point of time to the execution under which the property was sold. The witness, who testified in relation to the payment of the execution to plaintiff's attorney, stated the tax fee was

paid to the attorney, and that he did not remember whether the clerk's costs were paid to the clerk or not,—that there was an unsettled account between the sheriff and him.

The court charged the jury, that although they might be satisfied, that the demand of the plaintiff in the judgment, under which the sale was made, was satisfied, by the payment made by the sheriff, yet if the defendant had no agency therein, and they found a portion of the costs unpaid, that the sheriff might cause a new execution to be issued, and levy upon the property of the defendant, Boren, and sell it without the act being void.

The court charged the jury, that the abandonment of the levy first made, and the seizure of other property of the defendant in the execution, without explanation, was not such an irregularity as would render void the last sale.

The court charged the jury, that although the sheriff became interested in the judgment, by the assignment of the plaintiff's attorney, to the extent of the terms of the said assignment; that his interest did not vitiate the sale to the plaintiff, who had no notice thereof, and was not such a transaction as he was bound to notice.

The court refused to charge the jury, that if they believed that the sheriff was the owner of said judgment, he was incapable of executing the commands of the *fieri facias*, under which the property of the defendant, Boren, was sold—because the question was abstract.

The court refused to charge the jury, that the entry upon the execution docket of the sheriff, of the assignment to Bushrod W. Bell, then sheriff, was notice to all purchasers of his interest in the judgment.

To these several charges, and to the refusals of the court to charge, the defendants excepted.

The plaintiffs in error here assigned the matter

contained in the bill of exceptions, and prayed that the judgment might be in all things reversed.

*Campbell*, for plaintiffs in error.
*Dargan*, contra.

ORMOND, J.—This was an action of trespass, to try title to two lots of land in the town of Montgomery, brought in the court below, by the defendant in this court, against the plaintiffs. A bill of exceptions was taken to the opinion of the court, which shews the following facts:—Spyker & Bradford, at the November term, eighteen hundred and thirty-six, of Montgomery County court, obtained a judgment against Boren, upon which an execution issued, returnable to the May term following, which was returned at the return term, endorsed, "levied on the lots in controversy, as the property of David Boren." The attorney of Spyker & Bradford, demanded and received from the sheriff, the debt, damages and tax fee,—the residue of the costs were not paid. The sheriff then received from the plaintiff's attorney, an assignment of the judgment on the execution docket of the sheriff, in these words:

"For value received, I assign this judgment and execution to Bushrod W. Bell, sheriff.

(Signed,)       "A. Martin, plaintiff's attorney."

The defendant Boren, had paid nothing.

An *alias fi. fa.* issued returnable to the next term of the court, under which the said sheriff, Bell, levied and sold the lots of land in controversy, to the defendant in this court, and conveyed the same to him by deed. It did not appear that the defendant had notice of the payment of the judgment, or of the assignment to the sheriff. The plaintiff, Garrett, in this court, (defendant below) produced a deed from Boren to him, for the same lots, the execution of which was subsequent to the rendition of the judgment, but prior in date to the deed from the sheriff to the defendants. On these facts, the court charged the jury, that although the sheriff became

interested in the judgment, by the assignment of the plaintiff's attorney to the extent of the terms of said assignment, that his interest did not vitiate the sale to the defendant, who had no notice thereof, and that it was such a transaction as he was not bound to notice.

The court also refused to charge the jury, if they believed that the sheriff was the owner of said judgment, he was incapable of executing the commands of the *fieri facias*, under which the property of the defendant, Doren, was sold; because the question was abstract.

And also refused to charge the jury, that the entry upon the execution docket of the sheriff, of the assignment to the sheriff, was notice to all persons of his interest in the judgment.

To the charge given, as well as to those refused, the defendants below excepted, and now assign the matters of law arising thereon to this court as error.

Two questions arise in this case: 1st. Can a purchaser of land, at a sheriff's sale, without notice, be affected by the discharge of the judgment under which he purchases, by payment, no satisfaction having been entered of record.

2d. Will the interest of the sheriff in the proceeds of the sale under the execution, affect the title of a bona fide purchaser, without notice of the interest, such interest not appearing of record.

These are grave questions, and have received our attentive consideration.

Before proceeding to the examination of the question, it may be well to disembarrass the case of some matters, which were urged by the counsel for plaintiffs.

It appears from the evidence set out in the bill of exceptions, that at the return term of the first writ of *fi. fa.* sued out on the judgment, the money was not made thereon; but that the sheriff himself paid the plaintiffs' attorney, the debt, interest, and tax fee; leaving the residue of the costs unpaid. The sheriff then took from the plaintiffs' attorney, an assignment of the

6p 50

judgment on his own docket of executions, in these words:

"For value received, I assign this judgment and execution to Bushrod W. Bell, sheriff.

(Signed,)          "A. Martin, plaintiffs' attorney."

We consider this payment by the sheriff, made, as it appears, without the knowledge or consent of the defendant in execution, a payment and discharge of the judgment (except for the small amount of costs unpaid) and in law, will have the same effect, and be attended by the same results, as if made by the defendant.

The assignment of the judgment by the plaintiffs' attorney, conveyed no interest whatever to the sheriff. It does not appear that he had any authority to act for the plaintiff, beyond the power delegated to him as an attorney and counsellor at law. That authority ceased with his collection of the money, and would not at any stage of the proceedings, have authorised him to sell or transfer any interest in the judgment, or the note or bond on which it was founded. But if he were an attorney in fact, his assignment would convey no interest. The assignment does not purport to be in the name of the principal, but is in his own name, and for this reason it would not be a valid execution of the power. Again, the assignment, if by a lawfully authorised agent, and made in the proper manner, would not, of itself, be notice to any one; it was made on the "sheriff's docket," which, as the law does not require him to keep such a book, we presume must have been his own memorandums of executions in his hands, kept in his own office. It was his own property, and it is too clear to admit of argument, that a memorandum in such a book as this, could not be notice to any one, but the parties concerned in the transaction.

We proceed to the examination of the main question, on which the decision must rest. None of the cases cited by the plaintiffs' counsel, maintain his proposition, that the execution is absolutely void, and not voidable merely. For it is properly conceded, that if the execu-

tion is voidable only, the purchaser may defend himself under it.   One of the cases most relied on by the plaintiff's counsel, is the case of *Woodcock* vs. *Bennet*.[*]   In that case, a judgment had been obtained against two persons—one of them died after judgment; and after his death, and more than a year and a day after the rendition of the judgment, and without its being revived by *scire facias*, the plaintiff sued out an execution, and sold the lands of the defendants.   *Woodworth*, justice, in delivering his opinion, which was adopted by the whole court, after commenting for some time, on the question of erroneous and irregular, or void process, says : "The execution may be said to be irregular and void; for it directs, to levy on the goods and chattels of a person not in being, and for want thereof, to be made of his lands, which may have been held by persons strangers to the judgment, and ignorant of the proceedings." Again— "I apprehend the reason, why an execution is considered voidable merely, when issued on a judgment where no change of parties is required,—and that an execution is void, when issued to charge the lands, after the death of the defendant, without *scire facais*, will be apparent on this further consideration—When issued after a year and a day, and the parties not changed, the defendant may or may not, at his election, raise the question of regularity.   The law permits the plaintiff to issue it, and considers it regular at the time of issuing it, subject to be defeated, on the application of the defendant.   If he apply before execution executed, the sale will be arrested, and all proceedings under it, cease ; if he lie by, until after sale, then on the principle that the execution is erroneous process, and good until reversed, he cannot recover the goods sold ; he can only call on the plaintiff for the money recovered.   In the other case, the act of issuing the execution is not warranted by law.   This

---

* 1 Cowan, 711.

forms the substantial distinction between void, and void-able process."

The rule is correctly laid down in *Luddington* vs. *Peck,*[*] by Gould, justice. "The irregularity must be, in the process itself, *or in the mode of issuing it;* it cannot be irregular, when sued out according to the established course of practice."

It is clear, that this authority will not support the position of the plaintiffs' counsel. The case is materially variant from this, in one most important particular. The defendant in the execution was dead; and from the plainest dictate of common justice, his lands could not be sold to the prejudice of his heirs: or, as the court intimated, of some third person claiming under him, who might never have heard of the judgment: as little will the reasoning of the court avail. "The term voidable, implies that there is a party who may avoid." Here there was a party, who might have avoided the process; yet he chose to lay by, until an innocent purchaser invested his money in the land.

The case of *Jackson* vs. *Cadwell,*[†] was relied on by the counsel on both sides. It was a contest between the original parties to the judgment; and therefore not in point. Yet in that case, Woodworth, justice, says,—"In the case now under consideration, the party seeking to avail himself of the irregularity of the sale, was a defendant who stood by, and looked on, while his property was sold, by virtue of an execution which had been paid, as he now alleges. No effort was made on his part to stay the proceedings, or set aside the sale, either by motion to the court, or by *audita querela.* *Had the property* been purchased by a *third person, a stranger* to the transaction between the parties to the execution, I should deny the plaintiff's right to recover."

It appears to us that this reasoning is sound, and based on the firmest principles.

<hr>

* 2 Conn. R. 700. † 1 Cowan, 623.

The case of *Jackson* vs. *Anderson*,[*] was an action of ejectment, for land purchased at a sheriff's sale. In that case, the purchaser knew that the judgment had been previously satisfied, and the cause went off on that ground.

In his opinion, Sutherland, justice, says,—"Conkey therefore acquired no title by his purchase at the sheriff's sale, having purchased with full knowledge that the judgment and execution had been previously satisfied and discharged; and the defendant is not estopped from contesting his title."

In *Swan* vs. *Saddlemire*,[†] one of the questions mooted, was the one we are discussing. The judge says, "I am strongly inclined to the opinion, that an execution, issued upon a judgment which has been paid and satisfied, is to be considered absolutely void, and not voidable; and that the purchaser under such execution, would acquire no title." He afterwards says, he gives no definite opinion, as it was not necessary to a decision of the cause.

The case in 7 *Cowan*, 1, was where there had been a previous levy, which the court held to be a satisfaction—They say, "admitting a bona fide purchaser, without notice, could protect himself, that could not help in this case, as the purchaser had notice."

In 7 *Johnson's* R. 426, the case was a motion by the defendant to set aside the *fi. fa.*, the execution having been paid by the sheriff. The motion was allowed.

Fifteenth *Johnson*, 444, was a payment of the execution by the sheriff, and another levy and sale. The suit was against the sheriff.

The case referred to in 18 *Johnson*, 441, was an action of ejectment to recover lands sold for taxes, which had been paid. The court determined, that as the lien on the land was only given on default of the payment

---

[*] 4 Wend. 485.        [†] 8 Wend. 676.

of taxes, the sale was a nullity. It is not perceived that this has any application to this case.

In *Freeman* vs. *Ruston*,[*] a *fieri facias* issued, after the defendant had been taken, and while he was in custody on a *ca. sa.*,—held that the *ca. sa.* operated as an extinguishment of the lien of the judgment, and was a satisfaction of the debt.

The case of *King* vs. *Goodwin*,[†] was similar in principle to the last. The plaintiff, after the defendant was committed on a *ca. sa*—caused his lands to be extended.

*Hammatt* vs. *Davenport*,[‡] was an action brought by the defendant in execution, against the sheriff, for selling property on an execution which had been previously satisfied,—held that there was no authority for the second levy.

We have thus briefly stated the cases relied on by the plaintiffs' counsel, and we think they do not sustain the position assumed by him. No one of them is precisely in point, though in some of them, the opinion is expressed, that in a case like the one at bar, the title of the purchaser would be sustained. In most of the cases, the original parties to the judgment were before the court, and in these cases the decisions meet our approbation. We think that even as to the cases cited by the counsel for the plaintiffs, the weight of authority is against him; but it cannot be denied, that there is considerable fluctuation of opinion; the point does not seem to have been definitely settled in the United States; it is certainly an open question in this State, and we feel ourselves called upon to settle it on such grounds as are warranted and sustained by analagous principles of well settled law.

In *Jeanes* vs. *Wilkins*,[§] we find an express authority in favor of the purchaser at a sheriff's sale, without notice that the defendant in execution was then in custody on a *ca. sa.* It is difficult to perceive on principle, any dif-

---

* 4 Dallas, 214.　† 16 Mass. 63.　‡ 9 Mass. 138.　§ 1 Vesey, sr. 195

ference between a satisfaction in fact, of a judgment, by the payment of the money, and a satisfaction in law, by taking the defendant in custody on a *ca. sa.* The facts were these: a creditor having the body of his debtor in execution under a *ca. sa;* during the continuance thereof, the sheriff sued out a writ of *fieri facias*, and levied on a lease-hold of ninety-nine years. The lease-hold was not sold until after the *fi. fa.* had expired, and then without a *venditioni exponas.* The Lord Chancellor (Hardwicke) determined "that to avoid the sale and title to the defendant, it must be proved that the *fi. fa.* was *void*, and conveyed no authority to the sheriff; for it might be irregular, and yet if sufficient to indemnify the sheriff, so that he might justify in an action of trespass, he might convey a good title, notwithstanding the writ might be afterwards set aside. It is said, that by law, during the existence of the *capias* and the person in custody, a *fi. fa.* ought not to be taken out; and certainly it ought not; although if the defendant dies, the plaintiff may have a new execution, as upon the statute 21, J. 1.; yet while that continues, resort cannot be had to any other execution; and the court without putting the party to his *audita querela*, would (as I apprehend) set it aside on motion. But yet, that *fi. fa.* was *not void*, and the sheriff might justify taking this leasehold by that writ, and so may the *purchaser under the sheriff who gains a title;* otherwise it would be very hard, if it should be at the peril of a purchaser under a *fi. fa*, whether the proceedings were regular or not."

This decision of this eminent judge, is an authority directly in point, unless it can be shown that there is a difference between a satisfaction in fact, and a satisfaction in law; a distinction which we believe does not exist.

It also establishes the principle, that in such a case the sheriff might justify in an action of trespass against him. The language of the case is,—"but yet that *fi. fa.* was not void, and the sheriff might justify the taking by this writ." To the same effect is the case in 1 Strange, 509.

Where the court issuing the process, has general jurisdiction, and the process is regular on its face, the officer is not, though the party may be, affected by an irregularity in the proceedings—see also *Savacool* vs. *Boughton.*[*] If, then, it be true, that the sheriff may justify where the process is regular on its face, and the court has a general jurisdiction,—the sheriff may justify for executing a *fi. fa.* which has issued on a judgment which has been paid, no satisfaction having been entered on the record: and if so, it can only be, because the process is not void, but voidable only. It is true, that if the sheriff is an actor in the transaction, conusant of the fact, he may be compelled to respond in damages to the injured party, as may also the plaintiff.

The question has been compared in argument to the case of a lien, created by the act of the parties; and it is insisted, that the payment of the money destroys the lien; and there can be no doubt that it does. But if in the case of a satisfied mortgage or deed of trust, the mortgagor or debtor should look on with folded arms, and permit a purchaser without notice, to invest his money in the subject of the trust or mortgage, would he not lose the benefit of his payment? That this is the law, might be established by a multitude of cases—see *Green* vs. *Price;*[†] *Taylor* vs. *Cole;*[‡] *Niven* vs. *Belknap.*[§]

If we should decide, that in a case circumstanced like this, a recovery could be had against the purchaser at sheriff's sale, confidence would be destroyed in such sales, and the consequences would be most injurious. Not only would it affect the value of property so exposed, but the fair purchaser would lose his money, invested under the sanction of the tribunals of the country,—while on the other hand, by deciding that the process is not void, but voidable only, and that the fair purchaser without notice, may acquire title under it, we preserve the general symmetry of the law. The *defendant*, as has been al-

---

*5. Wend. R.    † 1 Munf. 449.    ‡ 4 Munf. .    § 2 Johns. 573.

ready stated, has his remedy against the plaintiff, in the execution, as well as against the sheriff, if by his conduct he has made himself obnoxious to a suit.

Can the interest of the sheriff in the judgment, (such interest not appearing of record, and being unknown to the purchaser,) affect his title to property, purchased at the sheriff's sale?. We think it cannot. It would let in all the mischiefs which would be produced by declaring the process void. It is certainly true, that the sheriff has no power to pay the money due on the judgment, and keep the execution open for his own benefit. To allow such a traffic, would open a door to the greatest abuses, and be an invitation to extortion. Armed, as he is, with the coercive power of the law, the defendant would not deal with him on equal ground, and would be obliged to accede to such terms as avarice, inflamed by opportunity, and hardened by power, would be satisfied to impose. The defendant would have the undoubted right, in such a case, to arrest the process, and stop its execution; but should he decline doing so, and permit the process to be executed, it is impossible that the *bona fide* purchaser at the sale, without notice, should be disturbed.

We have been referred to the case of *Carter* vs *Harris.** The case was this: A person named Dickie, conveyed by deed to trustees, all his estate, for the maintenance of his wife and children. At the execution of the deed, he owed one Claiborne one hundred dollars, secured by note. This note was assigned to Harris, who was a deputy sheriff. Harris sued, and obtained judgment thereon against Dickie, and directed the clerk to assign the execution to his father. He afterwards levied the execution on a negro, and at the sale became the purchaser himself, at about one fourth of the value of the slave. There was but one bidder present beside himself. A bill was filed by the trustees to vacate the sale.

---

*4 Randolph, 199.

In determining the case, the court conclude from the evidence, that the assignment to the father was merely colorable, and at all events, that he was liable over to his father. On this hypothesis, the objection arising from his interest appearing on the record, was not removed. The decision, however, is made to turn on the fact, that the sheriff was the purchaser himself, and that the sale was not fair.

It is clear that this is not a decision on the point under discussion. It lacks the essential ingredient to make it applicable—want of notice of the sheriff's interest.

We think, that on principle, as well as on authority, a latent interest existing in the sheriff, in the avails of the execution, and not appearing on the record, will not affect a purchaser at a sale under such execution, without notice of the interest.

The conveyance of the premises to Garrett, after the judgment, cannot affect the title of the purchaser under the execution, even if he were a bona fide purchaser for valuable consideration, which is not shown by the record. He can be in no better situation than his vendor.

We have not taken notice of the fact, that the execution was not entirely satisfied, there being a portion of the costs unpaid. We should be inclined to the opinion, that a small portion of, or indeed all, the costs being unpaid, would not justify the issuance of an execution for the whole amount of the judgment. It is not however necessary to decide that point in this case.

The judgment of the court below is affirmed.