Mr. Justice Scott delivered the opinion of the Court. This was a proceeding by motion, in the Circuit Court, instituted .by Cummins, as administrator, to obtain redress for an alleged injury to him in his representative character resulting from an alleged improper issuance and execution of a fi.fa. upon a judgment in that Court de bonis testaioris in favor of the plaintiff in error. He brought in by notice the purchasers of the property at the sheriff’s sale, and, after a hearing, his motion was granted, the fi. fa. was quashed, and the sale made under its authority vacated without terms. The jurisdiction of the Circuit Court was not contested ; nor does there seem any reason to doubt as to the general question of jurisdiction in such cases; at the same time the authorities are not fully agreed as to the length and breadth of this juris-5* diction. All concede jurisdiction'to some extent, and all found it upon the control of the Court over its process and its officers. But where this power of control ceases to operate effectively, and where the power of the chancellor begins, the authorities do not clearly and distinctly define. It seems clearly inferable from them, however, that, to some extent, this jurisdiction of the common law Court is concurrent with that of the chancellor; as, for instance, in vacating sales for fraud and for mistake. But it may be well doubted, from the inherent incapacity of the common law Court to protect completely all rights that might be affected by vacating a sale under some circumstances, whether this jurisdiction can go the full length of a complete concurrency. For, in some instances, these might be so complicated as to require, for their protection, an adjustment of equities, settlement of accounts, delivery up and cancellation of title papers, or conveyance of title, that might require the exercise of powers beyond those justly belonging to a Court of law, although then in the use of its rightful powers of equitable control over its own process and over the conduct of its officers. The most respectable authorities authorize us to state affirmatively, however, “ 1st. That a party injured by the improper execution of a fieri facias, may obtain redress on motion to the Court from which the writ issued: 2d. That a sale of land may be set aside when the sheriff is guilty of a mistake, irregularity, or fraud to the prejudice of either party or of a third person: 3d. That the misrepresentation or fraud of a purchaser furnishes a just ground for invalidating a sale.” Mobile Cotton Press, &c. vs. Moore & McGee, (9 Porter (Ala.) R. 692,) where the English and all the leading American cases were carefully examined in detail. (Hamilton vs. Shrewsberry, 4 Rand. (Va.) R. 247.) It is not, however, every irregularity, either in the issuance or in the execution of the fi.fa. that will authorize the vacation of a sale made under its authority, although such irregularity might be sufficient to authorize the quashal of the fi.fa. itself: nor does the quashal of the fi.fa. necessarily vacate the sale made under its authority. (Chambers vs. Stone & Pope, 9 Ala. (N.S.) R. 260. Doe on dem. Van Capen vs. Snyder, 3 How. (Miss.) R. 68. 2 Littell 117. Bumpass vs. Webb, 3 Ala. (N.S.) 112. Cox vs. Nelson, 1 Mon. 91.) The power of the sheriff, when selling property under execution upon an existing judgment in a Court of competent jurisdiction being much more than a mere statute power. Its true source is the judgment and execution independent of, although concurrent with, the statute power, which,'while it directs the form and manner of execution, authenticates these other powers. But, to authorize the vacation of the sale for an irregularity of either of the two classes that falls short of making the process alsolutely void, knowledge of or participation in the same must be earned home by proof to the purchaser, and the burthen of this is upon the party seeking to vacate the sale, and it is not upon the purchaser to show himself a bona fide purchaser who has páid his money, received a deed, and had no notice of the irregularity, “ for it cannot be assumed that the .purchaser, who appears upon the record as a stranger to the judgment, was privy to the irregularity, nor indeed how could he have proved that he did not have such knowledge.” 9 Ala. (N.S.) Rep. 262. Boren et al. vs. McGee, 6 Porter (Ala.) R. 432. Saunders' heirs vs. Ruddell, &c., 2 Mon. 139. Cox vs. Nelson, 1 Mon. 95. Jackson vs. Anderson, 4 Wend. 480. ' The irregalarity, for which the sale was vacated in the case before us, dansisted not in any matter connected with the execution of the fi. fa., but in the issuance of that process. And it is insisted that the alleged irregularity in the issuance made the process itself vicious. In the first place, then, was the procesa of execution irregularly issued ? This involves an inquiry “ whether, under any circumstances, the Circuit Courts would be permitted to execute their own judgments de bonis testatoris;” a question that was expressly reserved in the case of Outlaw et al. vs. Yell, Gov., (5 Ark. 472.) Upon general principles, the affirmative of this proposition would seem to be clearly maintainable; all the analogies of the law are in favor of it. In England, although the administration of the estates of deceased persons was under the authority of the ecclesiastical Courts, the common law Courts had jurisdiction of claims against such estates and enforced their judgments by execution. There, as well as here, a scale of priority among the creditors was established and fixed by law; and if, when sued, the representative of an estate did not appear, and, by his plea supported by evidence, did not show that no assets were in his hands applicable to the payment of the debt sought to be recovered, two consequences followed: 1st. He would be personally liable for the debt, although he in fact had no assets properly applicable to its payment: 2d. A judgment de bonis testa-toris would be rendered, upon which an execution would issue that might be levied upon any goods and chattels in his hands unadministered. In our system, the first of these consequences is prevented by the provisions of the 171st sec. of our statute of Administration., (Dig., p. 141,) whereby no executor or administrator, or the security of any such, is made liable for more than the amount of assets actually in hand, on account of any failure to make defence, or plead, or on account oí any mistake in pleading or false pleading. And it will be seen in the sequel whether or not the second of these consequences, if not to the full extent as effectually provided against by other provisions of our statute, is not, nevertheless, sufficiently so to render it unnecessary for the representative of an estate to interpose any defence to si suit against him in his’representative character, that simply goes to the question of the applicability of assets in his hands to the payment of the particular demand sought to be recovered. And' this for the reason that all that could have been gained by such a defence at common law, is secured for him and the creditors by statutory provisions, which, in their legal effect, hold all the assets in the custody of the law, and by this means exempt them from execution until after such time as the purposes, for which they were placed within that custody, have been fully subserved. Besides, however, these general considerations, there are others predicated upon our constitutional and statutory provisions confirmatory of this affirmative position. The jurisdiction of the Circuit Court in actions against executors and administrators, will not be questioned. Nor can there be, in its proceedings in such cases, any possibility of conflict with the jurisdiction of the Probate Court, to be restrained by statute or by comity, until after the rendition of judgment, and not then under all circumstances. Our statutes certainly recognize the right of the Circuit Court to render judgments de bonis testatoris, else why permit any action pending against the deceased at the time of his death to survive and be revived against his executor or administrator? (Dig., p. 126, sec. 86.) Or why the recognition of the Tight to commence actions generally against executors and administrators after the death of testator or intestate, (sec. 87,) and make provisions touching the conduct of such suits, (secs. 93, 94, page 127, and secs. 171, 172, page 141,) and the character and effect of judgments in such cases ? There is nothing in these provisions which, in terms or by necessary implication, confine them to actions in the Probate Court; on the contrary, the provisions of sea 86, p. 126, and of sec. 88, p. 99, of the statute of Abate-ments, clearly cannot apply to the Probate Court exclusively. Nor is there any provision of the statute which, in express terms, authorize a judgment de bonis testatoris to be rendered in the Probate Court or the issuance from that Court of a fi. fa. of this kind. The concise entry of the order of allowance made upon the records of that Court is to have the force and effect of a judgment, (sec. 101, p. 128); but when interpreted in connexion with •all the other provisions of the statute relating to administration, seeming to contemplate the reduction of the assets to money, before the debt, to which they may be applicable, shall be ordered to be paid — the execution de bonis propriis, then authorized to be issued for failure to comply with that order, (sec. 127, page 133,) and upon return of that “ not satisfied,” the sci. fa. judgment and execution against the securities, (sec. 128, 129,)- — there would be color to hold that the &th section of the statute of Executions (ch. 67, Dig. 495,) had no application to judgments in the Probate Court: but we do not so determine, as that question is not necessarily involved, and it is altogether sufficient for the purpose of the question that we are examining to hold, as we do., that this 8th section does apply to judgments rendered in the Circuit Court, and is necessarily ah express statutory recognition of the right of the Circuit Court to issue executions de bonis testator is. But although the Circuit Court may execute its judgments, under what circumstances can it do so rightfully, and without invading the province of the Probate Court? Certainly not before the plaintiff in the judgment acquires a right to subject the assets of the estate to seizure and sale for the satisfaction of his debt. It is true that, in general, the judgment determines this right for the plaintiff; but, under our laws, it can only do so sub modo. Ryan et al. vs. Lemon as ad., 2 Eng. 84. In Mississippi and Alabama, and perhaps in some other of the States, by statutory regulations of their own, whenever the estate .of a deceased person is reported to their orphans’ court by the executor or administrator to be insolvent, that Court is thereby invested with exclusive jurisdiction in rem of such insolvent estate, and the assets are, by this means, placed without the reach of the process of any other tribunal, and this is done in order to a preservation of the assets and a fair and equal division of them among the several creditors then unpaid upon a scale of priority fixed by law. This is the public policy of those States as to estates of deceased persons, only when supposed to be insufficient for the payment of all debts. Our policy, however, touching estates,' does not look to them in this wise only when insolvent, but in all cases; and thereby prevents hardships and provides against injustice incidental to, and known to be of frequent occurrence in those States where assets are allowed to be subjected to the full payment of any debt against an estate, before the entire amount of debts had been ascertained. Our laws, therefore, more justly and wisely, upon the happening of the death of an intestate or testator at once invests our Probate Courts with at least a potential jurisdiction over the entire estate of the deceased, which is put in actual exercise, if not before, at least upon the granting of letters testamentary or of administration. And the legal effect of this is, to place, from that moment, the entire estate, real and personal, within the custody of the law where it remains until disposed of under authority of that Court, or until the purposes, for which it was placed there, have been fully subserved. It is true that, in the settlement of estates where the assets were superabundant, no injustice might be done by any want of adherence to the regulations of the statute touching priority and payment, as all might in such cases be promptly paid; but, on the other hand, in a case where assets were deficient, the greatest injustice might be the result of such a departure. The law having marshaled the rights of creditors on a fixed scale of successive subordination, each class to be paid in its order, and, in case of a deficiency of assets to pay in anyone class, to be partitioned among that class pro rata, to the absolute exclusion of all claims in classes lower in the fixed scale, if the assets were subject to seizure and sale a creditor in a lower class might in case of a deficiency <of assets have his whole claim satisfied to the entire exclusion of all those in a higher class, which, in such case, it was the purpose of the law alone to satisfy; and thus the whole policy of the law might be defeated. But these considerations of convenience or inconvenience are of but little weight when there is so little to be construed as in the present case. For the provision is express, and that provision relates to all estates, whether solvent or insolvent, that “ all demands against estates shall be paid by the executor or administrator in the order in which they are classed,” and also that “ no demand of one class shall be paid until the claims of all previous classes are satisfied.” (Dig., sec. 106, p. 129.) And it was settled in 5 Ark. 473, that the duty to pay a debt is not upon the executor or administrator until an order of the Probate Court to this effect is first made after the appropriation in that Court of assets to such payment; consequently, until such order, the creditor, whether his claim be in judgment or not, has no right to the satisfaction of his debt out of the assets. And it would seem strange indeed, under these circumstances, that a party should be allowed an execution, the purpose of which was to satisfy a debt before the time when the law allowed that debt to be paid, and at the very (time when the law prohibited its payment: and that, too, to be levied upon goods and chattels in the custody of the law itself, and, therefore, if levied at all, could only be done by an invasion of the rights and authority of the Probate Court. It would seem, therefore, to require no further examination or argument to become satisfied, as we are, that the process of execution issued in this case was irregular. But was it void or voidable merely ? And, to ascertain this, we must further pursue the inquiry, which we have been some time making, under what circumstances can the Circuit Court rightfully, and without invading the province of the Probate Court, issue execution de lords tesiatoris ? ■ It was said, in the case cited from 5 Ark., “ that the Probate Court is manifestly, by the constitution, the forum where the amount of assets and the order in which they are to be appropriated by law for disbursement is to be fixed and ascertained,” and, in the case cited from 2 Eng., that “if the party adopts the common law form of action, and proceeds in the Circuit Court for the recovery of a claim against an estate, he will of course be subjected to such qualifications of his remedy as may have been imposed by legislative enactment.” We have already seen that the legal effect of our legislative enactments have so qualified his remedy that he cannot rightfully proceed in the Circuit Court beyond a judgment, because the judgment does not of itself give him the right or even permit him to subject the assets of the estate to seizure and sale. And, therefore, if he will not voluntarily go with his judgment into the 'Probate Court, and there have it classed, and ordered to be paid after that tribunal may have ascertained in the usual manner that there are assets subject to its satisfaction in the regular order of the fixed scale, (Dig.. p. 126, secs. 86, 87, and p. 133, secs. 124, 125, 126,) there would seem to be no help for him, unless he will wait until every Other debt against the estate shall have been first fully satisfied. If, however, he should think proper to pursue the course indicated and in the usual manner procure an order for the payment of his judgment, and the representative of the estate should, on demand, fail or refuse to pay in obedience to the order, there would seem no further obstacle to his enforcing the payment of his judgment in any of the various modes then open to him. Of these, the statute affords several, all of which are cumulative of his common law remedy. 1st. He might proceed de bonis pro-priis against the representative of the estate under section 127, and if fruitless, by sci. Ja. make the securities to the bond liable under section 128. If, however, there should be goods and chattels, lands or tenements, remaining in specie in the hands of the representative of the estate, and the judgment creditor should desire to-seize and sell rather than proceed in either of the modes provided by statute that we have just pointed out as cumulative, he would seem to have the right to. do so, for the order of the Probate Court directing his entire claim to be paid and the refusal of the representative of the estate to pay it in obedience to the order would seem, in view of the policy of th'e law, to have the legal effect of removing as to such judgment creditor every obstacle between his judgment and the assets, as all other creditors have been in such case either provided, for, or are junior in their rights, and there are no others interested except those who are to succeed to the ultimate rights, of the deceased, and they can in justice interpose no obstacles in the way of a creditor whose claim is paramount to theirs. And even in case there were no assets remaining in specie to be reached by. a fi. fa., he might choose to have such an execution issued in order to get a return of nulla bona upon it with a view to proceed on the administration bond in the common law form of an action suggesting a devastavit, for, although it is said in the case cited from 5 Ark., that the return of “ nulla bona” upon an execution de bóñis testatoris from the Circuit Court, is not, as in England, “evidence'of a devastavit so as to establish waste and render the administrator personally liable,” that is to be understood of such return unconnected with the proceedings in the Probate Court. , Because that return, in connexion with the judicial ascertainment in the Probate Court of sufficient assets liable to the satisfaction of the particular judgment, and with the order for its payment and the refusal of the administrator to pay in obedience to the order, are as conclusive evidence of an actual devastavit as the return of “ nulla bona” was in England. The proceedings in the Circuit Court, united with those in the Probate Court, amounting, as to this, fo the identical same thing the proceedings in the common law Court alone did in England. But suppose the Probate Court should order only a part of the judgment creditor’s debt to be paid, there not being assets subject to its entire payment, could an execution, under such circumstances, be issued from the Circuit Court ? Unquestionably no: for the reason that an execution is an entire thing, and must follow the judgment upon which it issues, and, besides, if the administration had not terminated finally, the payment of the residue of his judgment was as yet prohibited by the policy of the law. But if, however, the administration of the estate had been finally closed, and orders had been made for the disbursement of all the assets although these final orders might not, for want of sufficient assets, direct the payment of the entire judgment, no good reason can be perceived why in such case an execution might not be lawfully issued upon the judgment in the Circuit Court, (although no practicable object might be attained by it); because the provisions of the statute, which had had the legal effect to suspend the execution, had, by the closing up the administration, fully spent their force. Having seen, then, in the views that we have taken of this question, that the legal operation of our statutes in inhibiting the issuance of an execution upon a judgment de bonis teslatoris in the Circuit Court, was not to make that inhibition invincible but vincible, not absolute but qualified, it becomes easy to determine that the process of execution issued in the case before us was not absolutely void, but was voidable merely. As the analogy to numerous adjudged cases, where the Ji. fa's were held voidable merely, becomes strong and clear, as where the judgment was satisfied, but the satisfaction was not entered of record; as where the judgment had become dormant and the execution was issued before revival; as where the execution had been issued although the judgment was at that time injoined; as where the execution had been issued after the estate had been returned to the orphan’s court insolvent, and where the execution had been issued although the judgment had been superseded pending a proceeding by appeal or writ of error. Dixon vs. Watkins et al., 4 Eng. 139. Boren et al. vs. McGeehee, 6 Porter (Ala.) R. 432. Neibert's ad. vs. Withers, 1 Smedes & Marsh. Ch. R. 599. But although not absolutely void, the fi. fa. was irregularly issued, and was properly quashed; and it would have been the duty of the Circuit Court to have quashed it whenever brought to its notice at any time before the sale under it, and for this purpose a judge in vacation should have granted a supersedeas on application as provided by the statute. (Dig., p. 509, sec. 76.) Nevertheless, this did not authorize the vacation of the sale made under its authority, because it no where appears that this irregularity was known to the purchaser, nor did he have any good reason to suspect that the execution had been irregulai'ly issued, because, finding the execution regular upon its face, he had a right to ‘ presume that the contingency had arisen which authorized the issuance, — the officers of the law being always presumed to do their duty. Sander's heirs vs. Ruddle, &c., 2 Mon. 139. Cox vs. Nelson, 1 Mon. 94. Wyman et al. vs. Campbell et al., 6 Porter 219. lb. 432. 9 Ala. (N.S.) R. 261. Although a purchase under an execution issued upon a judgment of a Court of competent jurisdiction, however regular may be the proceedings throughout, is no protection against the claim? of third persons; yet, unless irregularity be known to the purchaser, it is a complete protection against the parties to it, although the judgment be afterwards reversed or the execution quashed. (Mannings’ case, 8 Co. 96. 1 Burr. 34. Ld. Raym. 73. Bing. on. Ex. 265. 1 Wash. 313. 4 Rand. 427. 4 Dana 98.) This principle is one of public policy. Those who are expected to purchase at judicial sales, cannot be presumed to know (the Court having jurisdiction and the process of execution regular on its face) that the judgment is erroneous and maybe reversed: and, as it is a matter of great public concern that persons disposed to buy property should bid with confidence in the effectiveness of the sale, and should be protected by the law whose interpreters and ministers invited them to buy, it has been deemed better as a general rule that such sale should not be frustrated, so-far as an innocent purchaser may be concerned, by a subsequent reversal oí the judgment or quashal of the execution. It having been laid down by Lord Chancellor Hardwick, in Jeanes vs. Wilkins, (1 Vesey Sr. 195,) “that, to avoid the sale and title to the defendant, it must be proved that the fi. fa. was void, and conveyed no authority to the sheriff; for it might be irregular, and yet if sufficient to indemnify the sheriff so that he might iustify in an action of trespass, he might convey a good title notwithstanding the writ might be afterwards set aside.” And to the same effect is Strange 509. And this is also recognized as a general rule by the Supreme Court of Kentucky, in Cox vs. Nelson, (1 Mon. 95,) and by the Supreme Court of Alabama, in Boren et al. vs. McGeehee, (6 Porter 443.) We cannot doubt, therefore, both upon principle and authority, that the purchaser, in the case before us, obtained a good title, he having no notice of the irregularity in the issuance of the process of execution; and, therefore, the Circuit Conrt, although it correctly quashed the ji. fac, erroneously set aside and vacated the sale. Doubtless the defendant in error has his remedy ovex’, and may recover by action oix the case against the party liable, although he cannot reach the purchaser at the sale under the proofs made in this case if at all. Let the judgment be reversed, and the cause remanded.